The Temperance Mutual Benefit Association *v.* The Home Friendly Society of Baltimore, Maryland, and John A. Millane, Appellants.

*Corporations—Directors—Power to convey property.*

The directors of an incorporated mutual life association cannot, in the absence of legislative authority, and without any previous action of the members, transfer the entire membership and property of the association to another corporation.

Where a deed has been executed in the name of a corporation, in pursuance of an unauthorized act of the company's directors, the corporation may inquire into the validity of the consideration of the deed. In doing so it is not attempting to set aside its own act, but the unauthorized act of its directors.

Argued March 16, 1898. Appeal, No. 395, Jan. T., 1897, by defendants, from judgment of C. P. Susquehanna Co., Aug. T., 1894, No. 334, for plaintiff, on trial by court without a jury. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Ejectment for a lot of land in the borough of Hallstead.

The case was tried by agreement before SEARLE, P. J., without a jury.

From the record it appeared that on December 31, 1888, the Temperance Mutual Benefit Association, by a deed regular on its face, conveyed the property in question to the Home Friendly Society of Baltimore, Maryland. The deed was made in pursuance of a resolution of the board of directors, and to carry out an agreement made by the directors to transfer the entire membership and property of the Temperance Mutual Benefit Association to the Home Friendly Society.

The opinion of the trial court was in part as follows:

The consideration mentioned in said deed is $1,480, subject to a mortgage of $300. The body of said deed contains the following recital: " The said party of the first part, The Temperance Mutual Benefit Association, by its directors in special session, August 24, 1888, duly called, having authorized its

president and secretary to execute an agreement to convey the said premises to the said second party, The Home Friendly Society, on minute book of said corporation, page 62, which agreement was duly executed and its conditions complied with."

John A. Millane, one of the defendants, was in possession of the land described in the summons, at the time this suit was brought and the summons served, and he is still in possession of the same. The net rental value of the property is $125 per year. The mortgage, which was a lien against this property at the time of the conveyance from the plaintiff corporation to the defendant corporation, February 13, 1889, was paid by the defendant corporation about July 12, 1894. The organization of the plaintiff corporation has been kept up since the contract of August 24, 1889, the same as before, and is still in existence, doing business; a portion of its membership remaining the same as before the execution of said contract by virtue of policies issued previous thereto. A majority of the persons who were members of the plaintiff corporation at the time of the execution of the contract of August 24, 1888, had been transferred to and voluntarily became members of the defendant corporation prior to the execution of the deed of the land in suit by the president and secretary of plaintiff corporation to defendant corporation on February 13, 1889.

The evidence does not show the exact relationship between these corporations before the change of name of defendant, or before the contract of August 24, 1888. It appears that some business arrangement existed but its terms were not offered in evidence by either party. Mr. L. A. Tyler, who was at one time president of the defendant corporation, and is now president of the plaintiff corporation testified that " The Maryland Branch itself was of The Temperance Mutual Benefit Association of Pennsylvania, and it only existed by virtue of The Temperance Mutual Benefit Association of Pennsylvania." It appears that their business relations were of such a character that the plaintiff corporation issued its certificates of membership to certain policy holders of defendant corporation "entitling them to all the right and privileges granted by its charter, constitution, by-laws, rules and usages, and subject to all assessments made upon its members." At the time of the execution of the contract of August 24, 1888, the plaintiff had a member

ship of several hundred, about twenty-five of whom were minors. Nearly all of these members upon notice of the execution of this contract applied for and obtained membership in the defendant corporation under its terms, or allowed their membership to lapse. The exact number who applied for and obtained membership in defendant corporation does not appear in evidence. Neither does the number who allowed their policies to lapse. A few who were members refused to be transferred, and have retained their membership in the plaintiff corporation to the present time. In 1887, or about that time, the defendant corporation made an arrangement with the Home Mutual Life Association of Pennsylvania under which they were to accept the risks and carry out the stipulations of certain certificates issued by said Home Mutual Life Association and its members. The plaintiff corporation issued to the holders of these certificates so transferred to defendant corporation a certificate of membership in plaintiff corporation. The defendant corporation has paid to all of its membership which were transferred as hereinbefore set forth from the Home Mutual Life Association or from the plaintiff corporation upon policies which have matured, or to the beneficiaries mentioned in said policies, the amounts it had obligated itself to pay under the terms of said policies, amounting in the aggregate to nearly $45,000 (but there was no evidence given of any specific amount paid to policy holders to whom the plaintiff corporation had primarily issued policies and which were transferred to defendant corporation under agreement of August 24, 1888).

From all the evidence I am unable to find as a fact whether either of these corporations, plaintiff or defendant, were either benefited or suffered loss by reason of these transfers of membership from plaintiff corporation to defendant corporation. After the trial the parties made and submitted an agreement as to the possession of the land in suit as follows: "It is agreed that J. C. Millane went into possession of the property in dispute in this case on the first day of February, A. D. 1887. Up to February 12, 1889, was tenant under The Temperance Mutual Benefit Association, and afterwards under The Home Friendly Society, and was in possession at the commencement of this suit, and has remained in possession until now, March 7, 1896."

The foregoing findings of facts are all the specific facts bearing upon the issues given in evidence.

### RECAPITULATION OF FACTS AND DEDUCTIONS THEREFROM.

From these facts it appears that J. C. Millane, one of these defendants, is a tenant of the defendant corporation, and was formerly a tenant of plaintiff, but after the deed from plaintiff to defendant corporation continued in possession of the land as tenant of defendant corporation. These two corporations are Life Insurance Associations, without any capital stock, paying all losses by assessments upon their members.

The plaintiff corporation in its charter and government is very peculiar, in that while its policy or certificate holders constitute its membership, they have no voice or vote in the business affairs of the corporation, its original incorporators and those chosen by them electing all officers, including future directors, and having exclusive control of all its affairs.

The constitution and by-laws of the plaintiff corporation provide a fee for admission to membership, and annual dues. The constitution and by-laws of defendant corporation was not offered in evidence and there is no evidence that either a fee for admission to membership in defendant corporation was required or that any annual dues were assessable.

The agreement between these corporations of August 24, 1888, provided for a complete merger of the plaintiff corporation in that of defendant, including all of the franchises and property of plaintiff. The only consideration for this transfer of franchises and property is the agreement to give to the members of the plaintiff corporation (or such of them as wished) membership in the defendant corporation.

The transfer of the franchises and all of the property of plaintiff, excepting the real estate in suit was to be made March 1, 1889. The transfer of the real estate in suit was to be made as soon as a majority of the members of the plaintiff corporation were transferred to defendant corporation "provided all just debts and claims against said Temperance Mutual Benefit Association are paid or provided for." This proviso is peculiar in that it does not indicate who were to pay or provide for these debts of the plaintiff corporation, and nowhere in this contract of August 24, 1888, is there any express agreement

that defendant corporation is to pay the debts of plaintiff, nor
is there any evidence that it ever has paid any of them.

The consideration expressed in the deed is $1,480, "subject
to a mortgage of ($300) three hundred dollars." The recital
in the deed of authority to execute it is as follows : "The said
party of the first part, The Temperance Mutual Benefit Asso-
ciation, by its directors in special session, August 24, 1888,.
duly called, having authorized its president and secretary to
execute an agreement to convey to the said second party, The
Home Friendly Society, (see minute book of said corporation,
page 62), which agreement was duly executed and its condi-
tions complied with." The contract, this recital in the deed
and the resolution of the board of directors, date of February 12,.
1889, authorizing execution of the deed, clearly show that the
only consideration for it was the mutual agreements of the con-
tract and the transfer of the majority of the members of plain-
tiff corporation to the defendant corporation as provided in it..
There is no evidence to show that members of plaintiff corpo-
ration transferred to defendant corporation under this agree-
ment of August 24, 1888, were admitted into membership of
the defendant corporation upon any different or more favorable
terms than all of the other members of defendant corporation,.
or that they obtained any superior rights or privileges by reason
of their having belonged to plaintiff corporation.

While the evidence shows that defendant corporation has
paid upon its matured policies since February 12, 1889, the
gross sum of about $45,000, it fails to show the payment of any
specific amount to matured policies of members who were pri-
marily members of plaintiff corporation and transferred to defend-
ant corporation. The specific policies given in evidence as
having been paid were not primary obligations of plaintiff cor-
poration ; they were either original undertakings of the defend-
ant corporation or of the Home Mutual Life Association.
There is nothing in the evidence showing any further execu-
tion of the contract of August 24, 1888, than the execution of
the deed of the land in dispute and the transfer from the plain-
tiff corporation to the defendant corporation of a majority of
its members prior to the execution of the deed, the plaintiff
corporation having refused to further execute the contract,.
and having always maintained its separate corporate existence.

The gross rental of the real estate from the time defendant corporation took possession by their tenant, February 13, 1889, to close of trial was  .    .    .    .    $875.00

The amount of mortgage and interest paid by defendant corporation July, 1894, was  .    .    397.50

Leaving a balance of  .    .    .    .    .    $477.50

which in the amount of mesne profits due from defendant to plaintiff in the event of a recovery by plaintiff in this case.

### OPINION.

Without express authority of the legislature, neither of these corporations had the power to enter into the contract of August 24, 1888, which by its terms provides for the consolidation of these two corporations into that of defendant corporation: Lauman v. The Lebanon Valley R. R. Co., 30 Pa. 42; Stewart and Foltz's Appeal, 56 Pa. 413; Wood et al. v. The Bedford & Bridgeport R. R. Co., 8 Phila. 94.

It was strongly urged that the contract of August 24, 1888, was executed by the issuing of certificates of membership by the defendant corporation to a majority of the members of the plaintiff corporation, and their acceptance by said members, and the execution of the deed to defendant corporation for the land in dispute; and being so executed the plaintiff corporation is estopped from setting up this lack of authority to make it. It was held in Oil Creek, etc., R. R. v. Pennsylvania Trans. Co., 83 Pa. 160, that when a corporation had entered into a contract, which had been fully executed on the one part, and nothing remained but to pay the consideration, it would not be allowed, to set up that the contract was ultra vires. The reason for this rests upon the equitable principle that the corporation should not be permitted to receive all the benefits of its illegal contract, and then set up its own illegal act to escape paying for such benefits. In the case at bar there is no evidence of any valuable consideration having passed from the defendant corporation, or having been received by plaintiff corporation, either in execution of the contract of August 24, 1888, or of the deed of February 13, 1889, of the land in dispute. There is no evidence that a majority of the members of plaintiff corporation received any valuable consideration by the issuing to them of certificates of membership or policies in defendant corporation.

If the issuing of these policies to members of the plaintiff corporation had been the passing of some valuable thing from the defendant corporation to these members of the plaintiff corporation, it would not have been the giving of a valuable consideration to the plaintiff corporation itself, but only to certain of its individual members.

The property of the corporation belongs to its members. The directors of the corporation are its agents, with powers defined and limited by its charter. In Bedford R. R. Co. v. Bowser, 48 Pa. 29, Justice STRONG, in delivering this opinion, said of directors : " Their duties were to conduct its affairs to the furtherance of the ends for which the company was created. They had no power to destroy it, to give away its funds, or to deprive it of any of its means to accomplish the full purpose for which it was chartered." Conceding that the issuing of the policies by defendant corporation to a majority of the members was a valuable consideration to those members (the only consideration of this deed being the issuing of these policies), this was in effect dividing among certain of the members of the plaintiff corporation nearly if not quite all of the property of the corporation. In Geo. Riddell v. The Harmony Fire Co., 8 Phila. 310, the company proposed to divide 208 shares of stock of the fire association among its members. Judge ALLISON, in an opinion, held that this proposed division was illegal; that " as long as the corporation continued to exist the property of the company must be preserved to subserve the general purposes and interests of the body. They are bound to preserve and use it to advance this end, and therefore have no right to divert its estate or funds from their legitimate corporate use to that of the personal advantage and profit of the members."

The deed of February 13, 1889, was the act of the directors of the corporation made in pursuance of the illegal contract of August 24, 1888, and the directors acquired no more authority by the alleged assent of a majority of its members by their acceptance of policies from defendant corporation than they had without such assent. In Commonwealth ex rel. Claghorn v. Cullen, 13 Pa. 133, it was held that " to make a vote of acceptance valid as the act of a corporation, it should be passed at a meeting duly convened, after notice to all its members. In such cases congregated deliberation is deemed essential, and

where an opportunity for this is afforded the decision of a majority is binding if no other mode be prescribed by the charter. The private procurement of a written assent signed by a majority of the members will not supply the want of a meeting," etc. This same principle was affirmed in Langolf v. Seiberlitch, 2 Parsons, 65.

### CONCLUSIONS OF LAW.

1. The contract of August 24, 1888, between the plaintiff and defendant corporations, being an agreement by the plaintiff to convey to the defendant corporation all of its property and franchises, and such conveyance not having been authorized by an act of legislature, was illegal and void as between the parties to the same.

2. The deed from plaintiff to defendant corporation of the land in dispute, acknowledged February 13, 1889, having been made in pursuance of the contract of August 24, 1888, and for no other consideration than that set forth in said contract, was made without authority of law, and conveyed no title to the defendant corporation to the land in dispute.

And, now October 13, 1896, it is adjudged that the plaintiff, the Temperance Mutual Benefit Association, is entitled to have judgment rendered in its favor for the land described in the summons, together with the sum of $477.50 as mesne profits.

The prothonotary is directed to immediately give notice to the parties or their attorneys of the filing thereof, and if no exceptions are filed hereto within thirty days after the service of notice of filing thereof, the prothonotary is directed to enter judgment as required by the act of April 22, 1874.

Exceptions to the opinion were overruled, and judgment was. entered for plaintiff.

*Error assigned* among others was in entering judgment for plaintiff.

*Miller S. Allen* and *S. B. Chase*, with them *Wm. M. Post*, for appellants.—The deed from plaintiff corporation to defendant corporation, being valid on its face, and there being no allegation of fraud or mistake, is conclusive, and cannot be contradicted by plaintiff, and no evidence should have been allowed to defeat it: Allebach v. Hunsicker, 132 Pa. 349.

The acknowledgment of consideration in a deed under seal is conclusive so far as any attempt to defeat the title is concerned, unless fraud or mistake is alleged: McMullin v. Glass, 27 Pa. 151; 3 Washburn on Real Property (4th ed.), p. 371; Rockwell v. Brown, 54 N. Y. 213; Trafton v. Hawes, 102 Mass. 541; 1 Greenleaf on Evidence, sec. 26; Evans v. Dravo, 24 Pa. 62.

The evidence in this case, in our opinion, shows consideration: Blood v. Crew-Levick Co., 177 Pa. 606.

Corporations are presumed to contract within their powers. The doctrine of ultra vires, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong: Ohio & Miss. Ry. v. McCarthy, 96 U. S. 258; 2 Morawetz on Priv. Corp., sec. 703; 2 Cook on Corporation Law, sec. 692, p. 995.

Where the parties to a fraudulent or illegal contract have fully executed it, courts of justice will not interfere, but will hold them bound as they find them: Blystone v. Blystone, 51 Pa. 373; Sedgwick on Statutory and Constitutional Law, page 73; Case v. Kelly, 133 U. S. 21; Thomas v. W. J. R. R., 101 U. S. 71; 1 Story on Contracts, sec. 610; Ward v. Johnson, 95 Ill. 215; Whitney Arms Co. v. Barlow, 63 N. Y. 62; Allegheny City v. McClurkan, 14 Pa. 83; Wood v. Corry Water Works Co., 44 Fed. Rep. 146; Campbell v. Argenta Gold and Silver Mining Co., 51 Fed. Rep. 1; Amerman v. Wiles, 24 N. J. Eq. 13; Hackensack Water Co. v. DeKay, 36 N. J. Eq. 548; Oil Creek, etc., R. R. v. Pa. Trans. Co., 83 Pa. 160; Chicago Bldg. Society v. Crowell, 65 Ill. 453; Parish v. Wheeler, 22 N. Y. 509; Wright v. Pipe Line Co., 101 Pa. 204; Boyd v. American Carbon Black Co., 182 Pa. 206.

*A. H. McCollum*, of *McCollum & Smith*, for appellee.—A corporation has no right to sell or assign its franchises, either in whole or in part, unless specially authorized by law: Lauman v. Lebanon Valley R. R. 30 Pa. 42; Wood v. R. R., 8 Phila. 94; Stewart's App., 56 Pa. 413; Riddell v. Fire Co., 8 Phila. 310; Com. v. Cullen, 13 Pa. 133.

The directors of a corporation have no right to sell or dispose of its movable property where this prevents the continuance of their business; such a sale made by them is void as against

nonassenting stockholders: Balliet v. Brown, 103 Pa. 554, Green's Brice's Ultra Vires, 78–79; Pittsburg, etc., R. R. v. Bedford, etc., R. R., 81* Pa. 104; McCurdy v. Myers, 44 Pa. 535; Home Friendly Society v. Tyler, 2 Northampton County Rep. 409.

OPINION BY MR. JUSTICE FELL, July 21, 1898:

The finding of the learned judge that the consideration for the conveyance of the property in question did not pass to the plaintiff as a corporation, but to such of its members as dissolved their connection with it and became members of the corporation defendant, is fully warranted by the testimony, and it is conclusive of the controversy which has arisen. Both corporations are mutual life insurance associations. The plaintiff had acquired property by the accumulation of receipts for admission to membership, from annual dues and from assessments of the members. This property was a trust fund for the security of the certificate holders. It was within the power of the directors to sell this property for the purposes of the corporation and to use the money received in carrying on its affairs. They could not, however, close up the affairs of the corporation or transfer its property for the benefit of a portion of its members. This was in effect what they attempted to do. The agreement upon which the conveyance is based provides for the transfer of "the franchises, organization, property and control" of one corporation to the other. It was an attempt to merge one corporation into another without legislative authority and without any previous action of the members. That this could not be done is too clear to admit of doubt: Lauman v. Lebanon Valley R. R. Co., 30 Pa. 42; Bedford, etc., R. R. Co. v. Bowser, 48 Pa. 29; Balliet v. Brown, 103 Pa. 554.

The conveyance cannot be sustained on the ground that it was the consideration of a contract of reinsurance. No reinsurance was effected or intended. The purpose was to transfer the entire membership and property of one corporation to another, and it was attempted to effect this by the action of the board of directors alone.

As the question raised relates to the power of the directors of the corporation to make the conveyance, inquiry as to the consideration upon which it was based is not precluded by

the fact that the deed is regular on its face.    The plaintiff was attempting to set aside, not its own act, but the unauthorized act of its directors.

The judgment is affirmed.