MASON *et al. vs.* ATLANTA FIRE COMPANY NUMBER 1.

[This case was brought forward from the last term under §4271 (a) of the Code.]

1. The right to the whole estate of a decedent, and to recover the same from third persons, is primarily in the administrator. If there is none, the heirs may sue for realty; or the administrator may consent to a suit for realty by the heirs, or may assign a claim to a creditor or distributee, if he be unwilling to sue; but without some special reason, a suit in equity cannot be maintained by creditors, distributees or legatees for the recovery of property of the decedent from a third person.

(a.) That funds are in danger of being distributed and passing into the hands of insolvent and irresponsible persons, furnishes no excuse for a want of indispensable parties.

(b.) Complainants having no right of action at the commencement of their suit, could not maintain it by a right acquired during its pendency, as by then obtaining letters of administration.

2. A volunteer fire company was chartered by act of the legislature. Its officers were to be commissioned by the governor. It had no stock or subscription by its members, and its property was such as was acquired by donation. The only compensation of the members was relief from jury and militia duty. A member died, and some fifteen years thereafter, there having been no administration, there was a fund arising from the sale of property of the company in which his heirs claimed an interest, and to assert which they filed their bill:

*Held,* that they had no right to participate in the fund, either during the existence of the corporation or after its dissolution.

3. There is nothing here to which the statute of limitations can apply.

February 27, 1883.

Actions. Administrators and Executors. Title. Corporations. Before Judge HILLYER. Fulton County. At Chambers. October 6, 1882.

Mrs. Mason filed her bill on behalf of herself and her minor children against the Atlanta Fire Company No. 1, alleging, in brief, as follows: In 1850 the company was incorporated by the legislature, under the name of the Fire Company of the City of Atlanta. They were to elect their own officers, who were to be commissioned by the governor. The members, not exceeding thirty in number, were to be exempt from jury duty, and, except in case of

war, from militia duty. The length of time for the continuance of the corporate privilege was not prescribed. By act of 1854, the membership was increased to sixty, and the name changed to the Atlanta Fire Company No. 1; perpetual succession was given, with the right to have a seal, to sue and be sued, to form a constitution and adopt by-laws. They subsequently adopted a constitution and by-laws, which provided for the election of members, their duties, their expulsion, the dropping of them from the roll for delinquencies, the election of officers, etc. No provision was made, either in the charter or in the constitution and by-laws, for the acquisition of property; but from the collection of dues from the members and by voluntary donations, fairs, festivals, excursions and other public and private entertainments, a considerable amount of money was raised and invested in real and personal property for the use of the company. Mason, the husband of complainant, was a member of this company, and by his zeal, skill and energy, contributed more to the creation of this fund than any other one member. He died October 21, 1867, being at that time an active member in good standing, with all his dues paid and a clear record on the company's book. In 1882, the system of fire service in Atlanta was changed, the volunteer service being discontinued and a paid department being organized. This company, therefore, was dissolved, or at least the object of its incorporation ceased. They have sold their personal property for an amount not known to complainant, and their real estate for $10,300, and the present living members of the company are about to distribute the money without regard to the rights of the widows and orphans of deceased members. If the fund is so distributed, it will, in a large measure, go into the hands of persons who are insolvent and cannot respond to any judgment complainant may recover. The prayer was for an accounting between living members and the representatives of deceased members, for the appointment of a receiver to take charge

of the fund, and injunction to prevent its being paid out until the rights of complainant could be ascertained.

Defendant demurred to the bill, (1) because complainant disclosed no right in herself to assert the supposed cause of action, and (2) because there was no equity in the bill.

Defendant also filed an answer, the statements of which differed from those in the bill in the following particulars: Defendant acquired from the voluntary sources stated in the bill such property as was necessary to it for fire purposes. The city of Atlanta has abolished the volunteer fire system. It is not true that defendant has dissolved or surrendered its charter and franchises. The property being no longer needed, was sold, the proceeds of the sale of the personalty (which was acquired since 1867) have been divided among the members. No action has been taken with reference to a division of the money arising from the real estate. Defendant insists that at his death Mason ceased to be a member, and denies that either he or his estate had any interest which survived him.

The injunction and receiver were denied, but a temporary injunction was granted to restrain the paying out of $300 until the case could be heard in the Supreme Court. Plaintiff excepted.

GEORGE T. FRY; REED & WHITE, for plaintiff in error, cited, on the statute of limitations, Code, §§2928, 3196; 36 *Ga.*, 575; 1 *Ga.*, 379, 538; 6 *Ib.*, 310; 22 *Ib.*, 108. On the nature of the corporation and interest of members, Field Corps., §§69, 123; Mor. Corps., §§381, 662, 401, 403, 405, 343, 217; Code, §1688; 62 *Ga.*, 695.

HOPKINS & GLENN, for defendant, cited, on the statute of limitations, Code, §§2918, 2928. Administrator should sue, Code, §2483. On division of assets, Code, §1688; Ang. & Ames Corp., §195; 38 Cal., 174; 5 *Ga.*, 242; 53 *Ib.*, 628.

HALL, Justice.

1. The first question to be considered is whether there are any parties to this bill. Complainant sets up a claim, in behalf of herself and children, to the deceased husband's right to participate in a fund arising from the sale of property belonging to a fire company, of which he in his lifetime had for many years been an active and prominent member. When this proceeding was commenced, he had been dead for more than fifteen years, and during all that time there had been no representation upon his estate.

This is a suit concerning personal property, and by the Code, §2483, upon the death of the owner, the title to real property vests immediately in his heirs at law, but the title to all other property vests in the administrator of his estate for the benefit of heirs and creditors, and it has been repeatedly decided that legatees, creditors and distributees can recover personal property only through an executor or administrator. 12 *Ga.*, 278. Upon the appointment of an administrator, the right to the possession of the whole estate is in him, and so long as such administration continues, the right to recover possession of the estate from third persons is solely in him. If there be no administration, or if the administrator appointed consents thereto, the heirs at law may take possession of the lands, or may sue therefor in their own right. Code, §2485. Where the administrator declines to sue, he may assign the claim to a creditor or distributee, who may, at his own expense, prosecute the suit; but if he recovers, the proceeds, after paying expenses of suit, are to be distributed by the administrator. Code, §2536. Without some special reason, a suit in equity cannot be maintained by a creditor, distributee or legatee, for the recovery of property from a third person. 61 *Ga.*, 602, 607; 8 *Ib.*, 356; 25 *Ga.*, 252. No such ground for equitable interposition, as the above cases hold necessary, is alleged or shown in this case.

The emergency set out and relied upon here, viz: the

pressing danger of immediately distributing these funds and placing them in the hands of insolvent and irresponsible persons could not dispense with indispensable parties. This emergency could have been met by letters of administration *ad colligendum*, (Code, §2487), and such administrator could obtain an injunction when necessary (24 *Ga.*, 131), and also institute a suit for collecting the effects of deceased, to which a permanent administrator, when appointed, might become a party. 50 *Ga.*, 264.

The complainants having no right of action at the commencement of the suit, could not maintain it by a right acquired during its pendency (55 *Ga.*, 329), as by then obtaining either temporary or permanent letters of administration.

2. This, however, was a corporation in which members held no stock, they were only members of it while they lived and belonged to the organization; and when they died, they left nothing that their heirs could inherit, or that could have been transmitted by will. While in life, they had nothing which they could sell or assign. It was not a trading, commercial or ordinary business corporation, or anything like it. Its property was acquired, not by subscriptions paid in by its members, who took certificates of stock, but by donations made by public spirited and patriotic citizens; whether the contributions came through fairs, concerts or otherwise, still they were donations for a great public object. Membership was not obtained by reason of any contract, or held by virtue of any vested right springing from a contract; it could only be obtained by the will of those composing the company; they acted under charter from the legislature of the state; the officers they elected were to be commissioned by the governor; the only compensation they received for the public duties required of them, was exemption of their members from jury duty and from militia duty (Act of 23d February, 1850); and, by their amended charter, their original number was increased from thirty to sixty; they were de-

clared a body corporate, under their present name; had perpetual succession of officers and members; power was given them to sue, etc., to have a common seal, to establish, change and amend their constitution, and to make by-laws, etc. Act 10 January, 1854.

The view we take of this case renders it unnecessary to determine whether this is a public or a private corporation; whether it is dissolved by the change and transfer of the service it was created to render, to others, authorized by the public authority to perform them, or whether it still exists as a body corporate, although it has ceased to render the services for which it was created or to exercise any of its franchises, and has, by such non-user, incurred a forfeiture; or what will become ultimately of the property belonging to the corporation, upon its dissolution or the forfeiture of its charter. The only question we need to determine is as to the right of these complainants to participate in its property during its existence, or after its dissolution.

In a case where it was apparent that the funds of the corporation consisted entirely of private donations, it was deemed unimportant to ascertain who were the donors, for the reason that if they or their descendants could be ascertained, they had no interest in the subject-matter, having parted with the property thus bestowed; neither had those for whose benefit the donations were intended any such interest. "The gifts were made, not indeed, to make profit for the donors or their posterity, but for something, in their opinion, of inestimable value; for something which they deemed a full equivalent for the money with which it was purchased. The consideration for which they stipulated, is the perpetual application of the fund to its objects, in the mode prescribed by themselves. Their descendants may take no interest in the preservation of this consideration. But in this respect their descendants are not their representatives." Dartmouth College *vs.* Woodward, 4 Wheaton, 632, 642, 643.

In the case of The People *vs.* The President and Trustees

of the College of California, 38 Cal. R., 173, Crockett, J., in a well considered and ably argued opinion, says : " The fact that a portion of the funds of the college were the result of voluntary donations to it, can, in no degree, impair the power of the trustees to surrender its franchise and dispose of its property in the manner proposed," *i. e.*, to bestow on another institution of learning similar in its objects but of larger capacity for usefulness. " The donors must be presumed to have known the law, and must be held to have assented in advance to any lawful exercise of power, in good faith, by the president and trustees, in respect to the corporate franchise and property. In addition to this, the donations were absolute and unconditional. The donors retained no interest, present or future, in the sums donated, nor acquired thereby any interest whatever in the corporate property, nor any right to control it. The donations were voluntary offerings by patriotic citizens in aid of the cause of education ; and the management and disposition of the fund was confided absolutely to the president and trustees, subject only to such limitations and restrictions as the law imposed upon them. * * * That the trustees have the power to surrender the franchise after its debts are paid, is a proposition that admits of no doubt; and if they should do so without having made any disposition of its property, there being no stockholders or creditors, the personal property would vest in the state. 2 Kent, Comm., 386; Angel & A., Corp., §195. Such real estate as remained undisposed of, and which had been acquired by donation, would revert to the donors. But this rule would not apply to real estate acquired by the corporation by a purchase for value. In such cases the vendor has no further interest in the property or in its application, and on a dissolution of the corporation, if there be no stockholders or creditors, the title would vest in the state in the same manner as if it were personal property. This point was under discussion in Bacon *vs.* Robertson, 18 How., U. S. R., 480; and, in delivering the opinion of the court,

Mr. Justice Campbell says : 'The acquisitions of real property by a trading corporation are commonly made upon a bargain and sale, for a full consideration, and without conditions in the deed, and no conditions are implied in law in reference to such conveyances. The vendor has no interest in the appropriation of the property to any specific object, nor any reversion where the succession fails.' We are satisfied this is the true rule. If the College of California, therefore, had surrendered its franchise, owing no debts, all its personal estate then remaining and all its real property acquired by purchase for value, would have vested, by operation of law, in the state."

Upon this subject, see 5 *Ga.*, 242 ; 53 *Ib.*, 628 ; Code, §1688, cited by counsel for defendant in error. As to surrender of franchises, Code, §1686. As to when forfeiture is incurred and how it is effected, *Ib.*, §1685.

3. We will only add that there is nothing here to which the statute of limitations can apply.

Judgment affirmed.