CUMMINGS *et al. v.* HOLLIS *et al.*

When persons claiming to be members of an incorporated military company which has no capital stock, but has acquired property by donation, file an equitable petition seeking to obtain control and management of the affairs of the company so incorporated, and allege that the company was, for non-compliance with law, disbanded by an order passed by the Governor of the State pursuant to a statute, and that the members of the company, including the plaintiffs, acquiesced in such order and ceased to exercise military functions, *Held,* that the case so made does not entitle petitioners to the relief sought, and the petition was properly dismissed on demurrer.

There was no error in rejecting an amendment to the petition which more plainly made apparent the fact that the members of the company had ceased to perform the public duties imposed by the act which created it.

Argued May 24, — Decided July 25, 1899.

Equitable petition.   Before John L. Tye, judge pro hac vice. Fulton superior court.   September term, 1898.

*Anderson, Felder & Davis,* for plaintiffs.
*King & Anderson* and *Arnold & Arnold,* for defendants.

LITTLE, J.   W. B. Cummings and a number of others exhibited a petition in the superior court of Fulton county, making substantially the following case:   On December 14, 1859, the Gate City Guard of Atlanta was incorporated by an act of the legislature as a volunteer infantry corps; the charter was accepted, and the company organized thereunder performed the duties named in the charter; as an organization it entered into the service of the Confederate States and served during the war between the States; after the termination of that war, the existence of the company was suspended until 1876, when it was reorganized and continued as a military company under the charter until 1890.   Between the years 1879 and 1890, by public subscriptions, fairs, etc., the company realized a large sum of money for the purpose of providing a home for its members and the continued exercise of its charter privileges, and such money was invested in the purchase of a site in the city of Atlanta for an armory and building thereon, the management of which was put in a board of trustees, chartered by the superior court of Fulton county.   In 1890, the legislature

having passed an act requiring the enlistment of all military companies, certain members of the company did enlist in the service of the State for a period of one year, but such enlistment and extra service proving onerous to those who had enlisted, they declined to re-enlist but continued their charter organization. The term of the enlistment of the members expired in March, 1893, and none of the members of the company re-enlisted, not caring to assume the additional duties and services not required by their charter. In 1893 the Governor, on account of the failure of the company to re-enlist, passed an executive order declaring the company disbanded, but nevertheless it kept up its corporate organization as before, although it ceased to act in a military capacity. The arms which it had were returned to the State, and until 1895 the company did not drill or parade with arms. In 1895 the board of trustees purchased arms and equipments at considerable expense, the membership was largely increased, the organization was divided into the Old Guard and the Active Company, the Old Guard being exempt from certain duties to which the Active Company was subject. In 1895 it was questioned whether the company had the right to drill or parade with arms. It contended it had by virtue of its charter, and that the right could not be taken away from it either by the legislature or by the Governor. The question was submitted to the Governor, who decided that no members of the Gate City Guard could lawfully associate themselves together as a military company or organization, or drill or parade with arms, by virtue of their charter; but that any persons desiring to act as a military company must enlist and form a company under the general military laws of the State.

After this decision some of the younger members of the company decided to form a military company under the general law of the State, which they did, and enlisted in the State service, and after their enlistment they claimed that by virtue of their organization they had the exclusive right to certain of the charter privileges of the Gate City Guard. In this way they began to create dissensions in the company, and attempted to pass by-laws to curtail the rights of the old members and to

vest the management of the property and control of the affairs of the corporation in the hands of the younger company, and at a meeting of the company held in 1897 they procured a majority of the military company to be present, and in that manner procured the control of the meeting, over the protest of those members of the Old Guard who were present. These younger members elected a board of trustees who now claim to be the legal board and to have possession and control of the properties. They passed by-laws for the purpose of depriving petitioners of their right to vote in corporate meetings. Petitioners allege that the property owned by the corporation is real estate of the value of fifty thousand dollars, and personal property of the value of six thousand dollars, subject to two mortgages, one for $11,500, and the second for $4,000; that the income is not sufficient to pay current expenses and maintain the property; that tax executions have been allowed to go unpaid, and that the company owes additional debts. It is alleged that the object of the conspirators is to divert the use and enjoyment of the corporate property from the proper beneficiaries to the exclusive control and management of a small military company formed under the general State law, who also claim to be the proper beneficiaries of the trust estate. Petitioners claim that the real beneficiaries are the corporate members of the company chartered as the Gate City Guard in 1859, and that the members of the military company, as such, have no rights whatever in the property. They allege that the present illegal board of trustees contemplate increasing the debt of the corporation by purchasing additional uniforms. It is further alleged that the minority deny the right of petitioners to participate in the management of the property, and have undertaken to disfranchise petitioners by making them honorary members. Petitioners pray for the appointment of a receiver to take possession of the realty and personalty of the Gate City Guard; that the present board of trustees be enjoined from interfering with, incumbering, or transferring the property of the corporation, and from going upon the premises, and from denying the petitioners the right of the management of the corporation, to vote in its meeting, and otherwise continue

their active membership; that the defendants be enjoined from introducing new members into the corporation; and for an accounting on the part of the board of trustees for all moneys received by them belonging to the corporation.

The petition was demurred to on several grounds, and at the hearing the petitioners tendered in writing an amendment, making other allegations, and praying that the property be sold and the proceeds, after paying the incumbrances, be divided among the parties entitled thereto. This amendment, having been objected to, was refused, and to this ruling and judgment the plaintiffs excepted. The court sustained the demurrer and dismissed the petition. To this judgment also the plaintiffs excepted.

We find it necessary to pass upon but one ground of the demurrer, and that is, whether the petition contains any ground for relief. An examination of the act of 1859 shows that certain persons and their associates were incorporated as a voluntary infantry corps of the city of Atlanta, under the name of the Gate City Guard, with power to sue and be sued, have a common seal, hold such property real and personal, whether obtained by gift or purchase, as may be deemed necessary or convenient for the purposes of the corps, and make by-laws for their own government. It was also provided that the number of men composing said corps should never exceed the number of eighty privates, exclusive of the officers, and that all persons who were then enrolled or might thereafter enroll themselves as members of the corps, provided the number did not exceed eighty, should be declared exempt from jury, patrol, and militia duty; provided, that the corps should at no time drill and parade a less number of times yearly than was required by the militia laws of this State. It also provided for a president and secretary, and that the commanding officer of the corps should be president. It appears from this act, that the corporation had no capital stock, nor was there any subscription to be made by any of its members; that the property which it was authorized to acquire by donation or purchase was only such as was useful for the purposes of the corporation; that these purposes were to be performed

for and in the interest of the public. The corporation thus created was not for the profit or gain of its members, who received from the State compensation for the performance of the public duties required, by exemption from the performance of certain other public duties then required from citizens generally, that is, exemption from jury, patrol, and militia duty. Exemption from the latter duty must not be confounded with exemption from military duty. The corps was chartered in furtherance of the object of making trained soldiers from the body of the people. At the time this military company was created, militia duty was required from every able-bodied male person in this State between certain ages, from which there were few exemptions. The male inhabitants of each militia district in the several counties of this State, not exempt by law, constituted a company. These companies were organized into regiments, brigades, and divisions, the Governor being the commander in chief of the whole. By statute the militia were required to drill and parade at certain intervals, and the exemption in the charter of the Gate City Guard referred to this kind of duty, that is, militia duty. The corps, however, was organized and incorporated for military duty, and for nothing else; and when it ceased to perform military duty under the laws of this State, the purposes of its incorporation were at an end, and its charter was subject to forfeiture for non-user, under the general law providing for forfeiture of charters. Civil Code, §1883. The petitioners seek to have the property of the corporation placed in the hands of a receiver until the court should hear and determine to whom the possession of the property belongs, and by the offered amendment they pray to have the property sold and the proceeds divided pro rata among the parties entitled thereto, as set out in the petition. There are two reasons why none of the prayers of the petitioners could have been granted. The first is, that the petition shows on its face that the persons seeking relief are not members of the Gate City Guard and are not entitled to any of the rights or privileges conferred by the original charter. The only design in the creation of this corporate body was, that its members, as a volunteer military

organization, should become a part and parcel of the military forces of the State of Georgia, and the charter conferred upon the members no rights unless such military organization was kept up and maintained.

The petition shows on its face, that several years ago the company, finding military duty onerous, declined to enlist in the military forces of the State, as the law required, and were disbanded as a military organization by the commander in chief, and not allowed to drill and parade as a military organization. Having been incorporated only to perform duties which they allege became so onerous that they abandoned them, it seems to follow, as a matter of law, that the body ceased to exist as a corporation, by practically surrendering its franchise. Certainly, if the members failed to perform military duty, they could do nothing. So that, under the allegations, made, the petitioners show that they have no right as members of the Gate City Guard to any of the powers, privileges, or exemptions conferred upon the members of that corps under the act of incorporation. It is not a matter of concern whether the act incorporating the Gate City Guard constituted that organization either a public or a private corporation; nor is it necessary now for us to decide whether the organization still exists as a legal corporate body, nor whether as a corporation, in consequence of the non-user of the franchises for a period of years, coupled with the fact that under the laws of this State it was disbanded by the Governor, it has incurred a forfeiture of the original charter rights and privileges. The only question involved by the demurrer is as to the right of petitioners to control the property alleged to be owned by the corporation; and if it be found that the petitioners have no right to the control of such property, nor any interest in it, then the ultimate disposition of such property does not concern either this court or the petitioners. The company was organized for a purely public purpose, that of performing military duty for the State. The powers conferred were only such as were necessary for a military organization. The corporation had no capital stock, no shares of stock of any character; no subscription was required of its members; the only property which it was authorized un-

der the law to hold was such as was deemed necessary or convenient for the purposes of said corps, whether obtained by gift or purchase. Concerning the rights of the members of such a corporation, this court in the case of *Mason* v. *Atlanta Fire Company,* 70 *Ga.* 604, ruled that the representatives of a deceased member had no right to participate in a fund arising from the sale of the property of the company, either during the existence of the corporation or after it had been dissolved. The ruling made in that case was based on the reasons, that members in such a corporation held no stock; that they were members while they lived and belonged to the organization; that while a member of it was in life he had nothing which he could sell or assign; that it was not a trading, commercial, or ordinary business corporation, or anything like it; that its property was acquired, not by subscription paid in by its members who thereby became entitled to certificates of stock, but by donations made by public-spirited and patriotic citizens, and whether such contributions came from fairs, concerts, or otherwise, still they were donations for a great public object; that membership in such a corporation was not obtained as the result of contract, nor held by virtue of any vested right springing from a contract, but was only obtained by the will of those composing the company who acted under charter from the legislature of the State. These reasons apply in full force to the organization of the Gate City Guard, as set out in the petition, and, because of them, it must be held that, even if petitioners are members of the Gate City Guard, they can have no such interest in the property belonging to that organization as entitles them either to control it, or to have it sold and the proceeds divided. On the dissolution of a corporation of this character, its assets are appropriated in other ways than by a division among its members. Hence, there was no error in overruling the amendment offered to the original petition, nor in sustaining the demurrer to the petition because it contained no ground for legal or equitable relief.

> *Judgment affirmed. All the Justices concurring.*