DADE COAL CO. *v.* PENITENTIARY CO. NO. 2 *et al.*
DADE COAL CO. *v.* PENITENTIARY CO. NO. 3 *et al.*

*A, B, C, D,* and *E* were members of a corporation *X,* whose sole asset consisted of a lease of convicts for a limited period. The charter of *X* named no capital stock, and none is alleged to have been fixed by action of the members. The company itself engaged in no business. By agreement between the corporators, and with the consent of the executive and penitentiary departments, the convicts were distributed in certain proportions between the members, who thereafter severally paid the hire to the State, and were treated by it as lessees in the proportion assigned each. After such partition the camp of A was abolished by order of the Governor, the convicts then in its possession were taken away, and no further assignment was made to it. The convicts so taken were assigned, not to the corporation, but to *B, C, D,* and *E,* the other members of the original corporation *X.* *Held:*

1. Regardless of the rights of others or of the public to complain thereof, such partition, and availing itself of the benefits thereof, estopped *A* from denying that it became a lessee, and as such subject to all the provisions of the act of 1876 (Acts 1876 p. 40).
2. The consent of the State, the company, and each of its incorporators to the segregation of the joint or corporate interest under the lease amounted to a partition which vested *A* with title in severalty to its proportion of the former undivided interest in the lease.
3. Such partition vested *A* not only with the then present, but with the future rights under the lease.
4. The action of the Governor in abolishing the camp of *A* amounted to a forfeiture of all its rights under the original and sublease.
5. *A* had no cause of action against *X,* or against *B, C, D,* and *E.*

Argued February 19, — Decided March 30, 1904.

Equitable petition. Before Judge Lumpkin. Fulton superior court. February 28, 1903.

The Dade Coal Company brought suit against Penitentiary Company No. 2 and its stockholders, and another suit against Penitentiary Company No. 3 and its stockholders. The allegations in the two cases were in many respects identical, and both, being controlled by the same principle, were argued together. In the suit against Company No. 2 it was alleged that petitioner is a corporation; that defendant is a corporation; that petitioner, the Chattahoochee Brick Company, and W. B. Lowe are the owners of all the capital stock of Company No. 2, petitioner owning 12 1/2 per cent., the Brick Company 50 per cent., and Lowe 37 1/2 per cent. of said stock; that on June 21, 1876, the Governor entered into a lease with Company No. 2, whereby it was entitled to receive from the

State a certain proportion of the convicts sentenced to the penitentiary; that for many years, by agreement among the several stockholders of Company No. 2, and with the consent of the penitentiary department of the State, a division of the convicts awarded under the lease was made between the stockholders in proportion to their holdings; that on July 23, 1896, petitioner was deprived of the use and control of any of the convicts awarded to Company No. 2 as aforesaid, and those then in its custody were, under the order of the Governor, taken away from it and delivered to Lowe and the Brick Company, the other stockholders in Number 2; that in 1896, 1897, and 1898, other convicts were assigned to Company No. 2 by the State authorities, and others will be up to April 1, 1899, when the lease expires; that petitioner is the owner of a coal mine, and the labor of the convicts is valuable; that Lowe and the Brick Company, though receiving the benefit of their labor, have paid nothing to petitioner or to Company No. 2 therefor; that the removal of the convicts did not in any wise affect its rights to the capital stock held by it in Company No. 2, nor deprive it of the right to an accounting; and that since the convicts were taken and delivered to the other stockholders their labor has been valuable to such stockholders. The petition was demurred to on many grounds, and the petitioner thereupon amended by alleging that it has from the beginning been the uniform and fixed policy of the stockholders of Penitentiary Company No. 2 to distribute the convicts assigned to it under the lease among its stockholders in proportion to the stock held by each. This plan or policy has been recognized and approved from the beginning by the State through its executive and penitentiary departments. Convict camps were established by executive order for and on behalf of said several stockholders, and such camps continuously recognized as legal, and each stockholder has from time to time paid to the State a part of the rental due under the lease proportionate to his or its holding. The stockholders being few in number, and the Penitentiary Company being without assets other than the lease aforesaid, and without camps or facilities for working or employing the convicts, the plan or policy of dividing out the convicts among the stockholders as above set out has always been pursued, and each stockholder has always paid directly and individually the expenses, including hire of the con-

victs, as assigned and employed by him or it.   Said Penitentiary Company has never operated as a company, and has never in fact and true intent been a going concern, but each and all of the profits accruing to it, or which would ordinarily have accrued to it, have always, until the time set out in the original petition, been received directly by the stockholders in proportion to their holdings.   The Brick Company and Lowe control Penitentiary Company No. 2 ; the right of action for the accounting is in the latter company, and it would be vain to seek redress at the hands of the officers and stockholders, whose interests are antagonistic to that of plaintiff.   The Dade Company prayed for an accounting and for a judgment for its proportion of the value of the labor of the convicts.

Similar allegations were made in the suit against Company No. 3 and its stockholders, the main difference  being that in it the Dade Coal Company claimed to own 31 1/4 per cent. of the stock, having paid $20,000 therefor.   Part it bought from C. B. Howard, and the balance it purchased through Joseph E. Brown from W. D. Grant.   Said Grant was the owner of stock in Company No. 3, and with others gave a bond as required by the act of 1876.   On April 23, 1884, said Grant sold said stock to Joseph E. Brown for the Dade Coal Company, and to John W. Murphy, James W. English, and T. J. James, who, as a part of the contract of sale, obligated themselves to procure the release of said Grant from the bond given to the State, and, if that could not be done, to save him harmless on account of that bond and the convicts. Attached to the petition was a copy of the agreement by which Grant sold his stock to Brown, English, Murphy, and James. There is no allegation as to how the stock was transferred by them or either of them to the Dade Coal Company, but there is an allegation that Company No. 3 did not pay the State the rent for 1894, 1895, 1896, and 1897, and that the executors of Joseph E. Brown were compelled to pay $4,035 on account of Company No. 3, no part of which has been refunded except $539.61 returned by James.   There was the same amendment as that set out in the petition against Company No. 2, with a further amendment that when the camps were abolished, and by virtue of said order, the convicts were taken away from the plaintiff and delivered to the stockholders of Company No. 3.

There were separate demurrers on the grounds, that there was a misjoinder of parties defendant; that there was no cause of action; that there was no jurisdiction of the court to review the action of the Governor in taking the convicts away from the plaintiff and delivering them to the other alleged stockholders; that there was no right of action in plaintiff to recover for the proceeds of the labor of the convicts; that the petition does not show whom the contracts alleged to have been made were made with, nor the terms of such contracts; and, as to the allegations in suit against Company No 3, that there was no sufficient allegation as to what No. 3 owed for hire, or that the executors have any such interest in No. 3 as to entitle them to recover from defendant; besides other special demurrers not necessary to be considered, in the light of the opinion.    The court sustained the demurrers and dismissed both petitions.    The Dade Coal Company sued out separate bills of exceptions, which were heard together in this court by agreement of parties.

*Julius L. Brown* and *Anderson, Anderson & Thomas,* for plaintiff.    *John L. Hopkins & Sons, David W. Meadow,* and *Ellis, Wimbish & Ellis,* for defendants.

LAMAR, J.    The lease act of 1876 (Acts 1876, p. 40) is exceedingly indefinite as to the rights and status of those composing the Penitentiary Companies.    It is manifest, however, that the General Assembly did not intend to create ordinary corporations with the right to transfer shares so as thereby to turn over the management of the convicts to any one who would buy stock.    Only "bona fide citizens of Georgia" were authorized to become members.    The names of such citizens applying for the lease were to be entered upon the minutes of the executive department.    If their bid was accepted, the lease was then made to them, and thereupon ipso facto they became a corporation, with no right to sublet, and no indication of any right to sell shares, stock, or other evidence of membership.    The charter named no capital stock, and consequently was silent as to the shares or the number or par value thereof.    If by virtue of its power to make rules and by-laws any such provision could have been made by the action of the members, there is no allegation that any capital was ever named, that any was ever paid in, or that any scrip was ever

issued.   The company did no business of any sort, had no camps or prisons; and it is expressly alleged that, except the lease, it had no asset.   While, therefore, it is charged that the Dade Coal Company owned 12 1/2 per cent. in the stock of Company No. 2, and 31 1/4 per cent. in Number 3, it is evident, from the petition as a whole, that this can not refer to stock in the ordinary sense. It can only mean that, not on account of an amount contributed, but by an agreement among the members, the Dade Company was to receive a certain proportion of those assigned under the lease. The company had no assets.   It did no business of any sort.   It did not even receive the convicts from the State or pay the hire to the State.   But after the agreement as to the proportion that each member was to receive, they organized separate camps or prisons to which the convicts were sent.   The hire was paid, not by Company No. 1 or No. 2, but by the one in control of such camp, who was recognized by the State authorities as a lessee, and to whom all the laws applicable to the original companies were applied.   The State enforced against such camps all the regulations for securing humane treatment, and other requirements of the act.   And whatever may be the rights of the public, certainly the members of the company who made this arrangement, and who for years took advantage of the provisions thereunder, can not in litigation between themselves be heard to dispute its validity.

Whatever may have been the right of the members under the original lease — whether that of stockholders, tenants in common, partners, or what not, the consent division was equivalent to a partition, under which thereafter the interest was held in severalty.   If this division was the equivalent of the issuance of a stock certificate, then when there was a forfeiture of that interest, it was equivalent to a forfeiture of the stock.   There is no suggestion that this division was temporary, and had to be renewed from year to year.   Under one division each member received not only those on hand that year, but by virtue thereof an equal proportion during the continuance of the lease.   That this partition represented the present and future right thereunder is illustrated by the case in which such interest is said to have been sold by W. D. Grant, one of the original members of Company No. 3.   It was not and can not be claimed that, having sold his stock, he retained any interest in the labor of the convicts; or, having sold his in-

terest in the convicts' labor, he had any interest in the stock. Interest in the lease and in shares of stock were convertible terms. Loss of stock was loss of lease. Forfeiture of lease was the same as forfeiture of the stock. When the State, under the provisions of the act of 1876, forfeited the several interest, the Dade Company lost its interest in the lease as completely as a cotenant, whose lot assigned on partition, if sold under a tax fi. fa., would lose the land and the future increase of the land. When the interest was forfeited, it did not thereupon revest in Companies Nos. 2 and 3, so that what the Dade Company lost as a sublessee it regained in whole or in part as a corporator. But the result was to put the State in as complete control of this forfeited part as it would have had of the whole had either of the original leases been forfeited as an entirety. After the forfeiture the State had the right to make a new lease or a new assignment to any one selected by the Governor. The petition shows that this was done; for it alleges that plaintiff was deprived of the use and control of said convicts as hereinbefore set out, under and by virtue of the orders of the Governor of the State of Georgia, and by virtue of said orders said convicts were taken away from plaintiff and delivered to the stockholders of said Penitentiary Company. In the light of this allegation it is evident that the Dade Company had no cause of action against Companies Nos. 2 and 3, or those called stockholders thereof. The act of which it complains was not that of the company but of the State. The title of the stockholders was acquired not through Companies Nos. 2 and 3, but from the State directly.

The mere fact that a corporation has no capital stock does not necessarily deprive the members of their proportionate rights in the corporate property. But when there is no capital stock, when the character of the corporate enterprise has in it elements of personal trust making the personnel of the members important, with no right to sell or sublet, as here, the case is to be governed by rules altogether different from those applicable to an ordinary stockholder and his company. It is more nearly subject to the analogous principle governing that form of corporation in which the interest of a member before dissolution consists only in the right to use the corporate property, or to engage in corporate purposes. If he fails to attend the meetings, or to avail himself of

the corporate privileges, he has no cause of action against the company, or those who participated more actively than he. If during the continuance of the organization his membership is severed by death, resignation, expulsion, or other form of forfeiture, he loses all of his corporate rights. *Mason* v. *Atlanta Fire Co.*, 70 *Ga.* 604; *Cumming* v. *Hollis*, 108 *Ga.* 402; Schwartz *v.* Duss, 187 U. S. 8. This disposes of the controlling question in both cases, and makes it unnecessary to consider whether the Dade Coal Company was a " bona fide citizen of Georgia," which under the act of 1876 could be a corporator in Company No. 2, or whether it by purchase had the right to become a.member of No. 3. The allegation that the executors of Joseph E. Brown had paid $4,035 on account of rent due by Company No. 3 set out no cause of action. It failed to show that the estate was requested to make such payment, or to indicate how or why the payment was made, so as to' make Company No. 3 responsible therefor. There is no allegation that the estate owned stock in No. 3, or even in Dade Coal Company. It is inferable, however, that these payments may have been made on account of the agreement to hold W. D. Grant harmless on the obligation assumed by him in the bond. If so, there are no sufficient allegations to show that the latter had a cause of action against No. 3, or a right to subrogate the estate thereto if there was any.

*Judgment affirmed.　　All the Justices concur.*