Schwarzwaelder *v.* German Mutual Fire Insurance Co.

CATHARINE SCHWARZWAELDER, complainant and respondent,

*v.*

THE GERMAN MUTUAL FIRE INSURANCE COMPANY OF NEWARK, NEW JERSEY, FREDERICK TEGEN, JR., et al., defendants and appellants.

[Filed November 20th, 1899.]

1. At the suit of a member of a mutual insurance company, a preliminary injunction may be awarded to restrain the directors from changing the company into a joint stock company when the company itself has not taken the proceedings prescribed by the Insurance Companies act.

2. The procedure for changing a mutual insurance company into a joint stock company, under that act, indicated.

3. Under the amendment of the Insurance Companies act, which was passed March 6th, 1899, a mutual insurance company organized in 1893 cannot transform itself into a joint stock company against the will of a member who acquired membership by contract with the company, made before the passage of that amendment.

On appeal from a decree advised by Vice-Chancellor Emery, whose opinion is reported in *Schwarzwaelder* v. *Tegen, Jr., 13 Dick. Ch. Rep. 319.*

*Mr. Thomas Anderson,* for the complainant.

*Mr. Joseph A. Beecher* and *Mr. Frederick H. Lum,* for the defendants.

The opinion of the court was delivered by

DIXON, J.

This appeal was taken from an order that a preliminary injunction issue to restrain the defendants, the German Mutual Fire Insurance Company of Newark, New Jersey, and its direc-

tors, from changing the corporation from a mutual company into a joint stock company, and from transacting business as a joint stock company.

The complainant is the holder of a policy issued to her by the company on April 12th, 1898, insuring her against loss by fire between April 20th, 1898, and April 20th, 1901, to the amount of $2,000, and as such she is a member of the corporation, entitled to vote at its meetings.

The first ground of appeal is that the complainant's damage by the proposed change would not be irreparable, and therefore a preliminary injunction was improperly awarded.

But we think that in the equitable sense such damage is irreparable. The proposed change, if effected, would deprive the complainant of her membership in the company, for in a joint stock company only holders of shares of the capital stock are members. Neither the common law nor statutes furnish any adequate remedy in the courts of law for such a deprivation. A writ of *mandamus* could not be obtained to restore her to membership, for the corporation in which she is entitled to be a member would have practically ceased to exist. Nor would an action for damages be likely to afford just compensation, as there is no rule by which the value of her membership can be reasonably measured. In these conditions the wrong threatened is, in the view of a court of equity, irreparable. *3 Pom. Eq. Jur.* § *1357.*

But the complainant's case may be well supported on another ground. It belongs to a class over which equitable cognizance is firmly established—cases where the directors of a corporation have adopted, or are about to adopt, some measure which is beyond the scope of their corporate authority, or in violation of the fiduciary duty which they owe to the members of the corporation. In such a case a single member, on his own behalf merely, or on behalf of himself and all others similarly situated, may prosecute a suit in equity against the directors, making the corporation a co-defendant, to obtain appropriate relief either by rescission or by prevention. *3 Pom. Eq. Jur.* §§ *1093, 1345,*

and cases cited.   This doctrine was enforced by the courts
of New Jersey in *Kean* v. *Johnson, 1 Stock. 401,* and *Black*
v. *Delaware and Raritan Canal Co., 9 C. E. Gr. 455.*   In
the latter case this court sustained a prayer for a preliminary
injunction.

The next question is whether the proposed action is beyond
the scope of the authority of the directors, under the circum-
stances which are admitted to exist.

The power to change a mutual insurance company into a joint
stock company is one which, if possessed at all, must be derived
from the statute. ˙ It is conferred in our legislation by the "Act
to provide for the regulation and incorporation of insurance
companies," the revision of which was approved April 9th,
1875 (*Gen. Stat. p. 1744*), which, on this point, received its
final form in the amendment of March 6th, 1899.   *P. L. of
1899 p. 17.*   The language is :

"Any of the mutual insurance companies chartered by the legislature of
this state or organized under the general laws of this state may, after giving
notice once in each week for six weeks, in a newspaper of this state published
in the county where such company is located, change to joint stock companies
by proceeding in accordance with and conforming their charter to the provi-
sions of this act."

The full meaning of this enactment is not very plain, but as
to two matters its import is reasonably clear—*first,* that the
company can make the proposed change only after giving the
prescribed notice ; and *second,* that by "the company" is in-
tended the corporation itself and not the directors, for, while to
the directors is committed the management of the ordinary busi-
ness of the company, yet it cannot be presumed that the legis-
lature designed to entrust them with the power of effectuating
this extraordinary measure, by which even the right of mem-
bership in the corporation would be destroyed.

The method of bringing about the change is declared to be
"by proceeding in accordance with and conforming the charter
to the provisions of the act."   When we examine the act, to

discover the purport of this clause, we find that there are no provisions in accordance with which a corporation, as such, can proceed to form a charter or to organize a joint stock company; that such acts can be performed only by individuals, not less than thirteen in number.

Construing the whole act together, the plan designed seems to be as follows: that the company, *i. e.*, the members of the corporation, lawfully assembled at a regular meeting or at a special meeting duly called, should direct a notice to be given in the mode prescribed by the act, setting forth that at a time and place specified the proposition to change the mutual company into a joint stock company will be considered and acted upon by the corporation; that at the time and place specified the company should determine whether the proposed change ought to be made; that if the change be thus ordered, individuals not less than thirteen in number should be appointed by the company to proceed, on its behalf and according to its directions, in the mode prescribed by the statute, to prepare and file the necessary declaration, to open books for subscriptions to the capital stock and to take such other steps as are requisite for the organization of a joint stock company.

That this course was not substantially adopted is admitted; nevertheless, the defendants thought themselves legally entitled to put the company on a joint stock footing and to transact business on that basis, and were proceeding to do so when the bill in this case was filed. This being in violation of the directors' duty to the complainant as a member of the corporation, an injunction was properly awarded.

There is another aspect of the case which should be presented.

The power to change a mutual insurance company into a joint stock company was originally conferred by the act of March 10th, 1852 (*P. L. of 1852 p. 159 § 16*), in these words:

"Any of the mutual insurance companies already chartered by the legislature of this state, may, after giving ninety days' notice in three of the public papers of this state, change to joint stock companies, by proceeding in accordance with and conforming their charter to the provisions of this act."

Schwarzwaelder *v.* German Mutual Fire Insurance Co.

At that time there was in the constitution of New Jersey no prohibition against the granting of exclusive privileges to corporations, and therefore the words of this enactment could have their natural meaning, uninfluenced by constitutional restriction. That meaning confines the granted privilege to companies "already chartered"—*i. e.,* chartered before the act was passed. A mutual company thereafter chartered must obtain in its charter the power of transformation to possess it. In exactly the same terms the legislature approved the law in the Revision of April 9th, 1875, when still such an act was constitutional. On April 27th, 1886, the section of which the above-quoted clause is part was amended, but this clause was not altered. *P. L. of 1886 p. 297.* Under the constitution then in force an amended section must be recited at length in the amending act, but by observing this constitutional form of amending a section, the legislature does not express an intention then to enact the whole section as amended, but only an intention then to enact the change which is indicated. *McLaughlin* v. *Newark, 28 Vr. 298; S. C. on error, 29 Vr. 202.* A like principle is applied in the interpretation of a revision of laws. "The laws so adjusted," said Chief-Justice Beasley, in *Knight* v. *Freeholders of Ocean, 20 Vr. 485,* "are not to be deemed to have acquired any different efficacy from that possessed by them in their original condition." Hence, in the amendment of April 27th, 1886, the words "already chartered" were still incapable of being applied to companies subsequently chartered. On April 9th, 1888, the section was again amended, and in the clause now under consideration there were inserted, after the words "already chartered by the legislature of this state," the words "or already organized under the laws of this state." *P. L. of 1888 p. 414.* According to the principle just mentioned, the phrase "already chartered" cannot be deemed applicable to companies thereafter chartered, and, under the rule "*noscitur a sociis,*" the phrase "already organized" cannot embrace companies thereafter organized. No other change was made in this section until the amendment of March 6th, 1899, first above quoted.

The German Mutual Fire Insurance Company was organized under our general laws, in 1893, and the complainant became a member of it in 1898. As we have seen, the company had then no power to change itself into a joint stock company. The complainant's right to membership was one of the benefits accruing to her from her contract of insurance in the company. Of this benefit the company had no power to deprive her, except in the mode provided by the contract itself. The act of March 6th, 1899, if enforced against the complainant, would impair the obligation of her contract by enabling the company to take from her a right derived from her contract with it, in a method not authorized by the contract. Such a law would be unconstitutional and void. Although the act under which the company was organized is subject to amendment, alteration and repeal by the legislature, yet such amendment, alteration or repeal can be effected only by the legislative power of that body, and its legislative power does not extend to the enactment of a law which impairs the obligation of a legal contract previously made. *Rahway* v. *Munday, 15 Vr. 395.*

We are therefore of opinion that the defendant company has no power to transform itself into a joint stock company against the will of any member who acquired the right of membership before the act of March 6th, 1899, was passed.

The order appealed from is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, DIXON, GARRISON, GUMMERE, LUDLOW, COLLINS, BOGERT, HENDRICKSON, ADAMS, NIXON, VREDENBURGH—12.

*For reversal*—None.