## HUBER, Appellant, vs. MARTIN and others, imp., Respondents.

*December 16, 1905—March 20, 1906.*

MUTUAL INSURANCE CORPORATIONS. (1–4, 12) *Charter provisions: Memberships: Commencement and termination: Rights, remedies, and interest of policy-holders.* (5–7, 9–11, 13) *Title to corporate property: Equitable interests in corporate property: Rates for insurance: Assets: Surplus: Accumulation: Distribution: Charter: Amendment.* (10, 11, 14) *Constitutional law.* (12, 16) *Equity: Actions by members: Refusal of officers to act.* (14–17) *Statutes: Construction: Partial unconstitutionality.* (15–17) *Corporate existence:* De facto *corporations: Action to test validity of incorporation: Form: Parties.* (17) *Re-organization of corporations.*

A mutual insurance corporation having a charter provision to the effect that a membership therein could only be created by accepting from it a policy of insurance and continue only till the end of the policy period, did business for a considerable period of time, accumulating a large surplus. A law was then enacted authorizing a re-incorporation under the general law for the creation of insurance corporations, with the consent of two thirds of existing policy-holders representing at least one half the outstanding insurance, the re-organized concern to be the owner of the property of the superseded company for its use in the conduct of its business. The act provided that any existing policy-holder of such a mutual company, in case of its being superseded, should be entitled at his option to take stock in the new company to the extent of such part of the total stock as the amount paid by him on his policy bore to the total amount of risks in force, or to receive such proportion of the surplus as the company's actuary might deem equitable, that being coupled with a provision that all the property of the superseded company should become that of the new concern, as aforesaid, no part to be divided among the members thereof. The legislative basis of re-organization, in form, contemplated the possibility of members of the superseded company at a specified time, in the aggregate, securing a small percentage only of the stock in the new concern or of the surplus aforesaid, and of existing and past policy-holders of the mutual company, in the aggregate, obtaining not to exceed one third of such surplus or stock. A re-organization occurred in form under such law as to the corporation in question, plaintiff and others not consenting.

Huber v. Martin, 127 Wis. 412.

1. Under the charter of a mutual insurance company providing, in effect, that one can become a member only by taking out a policy of insurance and that the membership can survive only to the end of the policy period upon which it is based, no one can rightly be treated as a member for any purpose at any time unless he then holds an unexpired policy of insurance.

2. If the charter of a mutual insurance company contains no provision on the subject, membership commences only with the taking out of a policy and lasts only for the policy period.

3. As regards rights and remedies, the policy-holders in a mutual insurance company are stockholders therein the same as owners of stock in a stock corporation, there being no charter provision to the contrary.

4. The interests of policy-holders in a mutual insurance company are twofold, they are both insurers and insured. In respect to the former they are entitled to share in the losses and profits of the business on the basis of a partnership, except so far as the charter or policy contract provides otherwise.

5. The title to the property of a mutual insurance corporation is in the company, but the equitable interests therein are vested in the members the same as in case of a stock corporation. While the corporation owns the property the members own the corporation.

6. It is competent for a mutual insurance corporation, there being no limitation in its charter to the contrary, to make rates for insurance with a view of probably creating a surplus and of subsequently distributing the same to members so far as experience shall show that the same is not needed in the business.

7. In case of a distribution of the surplus of a mutual insurance company or of its other assets, there being no charter provision to the contrary, existing policy-holders and such only are the legitimate distributees. In the aggregate, they are entitled to the whole.

8. The legislature may alter or amend the charter of a corporation but cannot legitimately appropriate its property without the consent of all of its members, either to its own use or that of a private party, though such party be a successor corporation, in the absence of some authorization to the contrary in the charter originally.

9. For all except corporate purposes, the property of a mutual insurance company, the same as that of any other corporation, belongs to its members whether they are stockholders in the technical sense or in the broader one which includes policy-holders in such a company.

10. The property of a mutual insurance company and the equitable property rights of its members are within the guarantees of the state constitution as regards the inhibition against laws impairing the obligation of contracts, and the inhibition of the national constitution as regards the equal protection of the laws and deprivation of property without due process of law.

11. A law enacted during the life of a mutual insurance company providing for the distribution of its assets or a bestowal thereof upon another without consent of all of its members, no authority in that regard being contained in the charter of such company, offends against the constitutional limitations referred to.

12. Any member of a mutual insurance company suing for himself and others similarly interested, may invoke equity jurisdiction to redress or prevent any wrong injuriously affecting the property rights of the corporation, when its officers will not move appropriately to that end.

13. The supposed common-law rule, that upon the termination of a corporation its debts become extinguished, its realty reverts to the grantors and its personal property goes to the sovereign, if it ever existed in fact, is wholly obsolete, except as to purely public corporations.

14. In case of a scheme of legislation for a particular purpose, created by the enactment of a law specially referring to the subject, and to other laws required for a complete plan, if the special enactment is the inducing provision and is unconstitutional, the whole is inefficient. The matter is governed by the rule, that where a part of a law is unconstitutional and was the inducement to the rest, which by itself would not have been enacted, the whole is void.

15. An unconstitutional act of the legislature is not a sufficient basis for a corporation *de facto*. That can exist only in case of a law under which it might have been created *de jure*.

16. The law that corporate existence cannot be inquired into, except by judicial proceedings in the name of the state, does not apply to a pretended but not even a *de facto* corporation.

17. In case of success, in form, of an attempt to re-organize a mutual insurance company on the stock plan under a law, in terms, authorizing it and the insurance business formerly carried on by the old company being continued ostensibly by the new creation, using the former's assets and good will, if the attempt is fruitless because of the enabling act being void such continued business is to be regarded as really that of the old corporation; as belonging to it.

[Syllabus by Marshall, J.]

APPEAL from an order of the circuit court for Washington county: JAMES J. DICK, Circuit Judge. *Reversed.*

Appeal from an order sustaining demurrers to the complaint. The facts relied upon for a cause of action were these: The defendant Germantown Farmers' Mutual Insurance Company is a corporation created and existing under ch. 278 of the Laws of Wisconsin for the year 1854, and the defendant Germantown Insurance Company is a corporation existing under ch. 89, Stats. 1898, and ch. 229 of the Laws of Wisconsin for the year 1903. The individual defendants are the officers and directors of the two corporations. Plaintiff is a policy-holder of the first-named company, holding policy No. 67,198, dated August 1, 1901, and expiring by its terms August 1, 1906, and by the law of 1854 mentioned he became a member thereof. Such company has, or did have before they were dissipated, as hereafter stated, assets in excess of $211,375.76, which are really the property of its members. September 28, 1903, the individual defendants and others wrongfully conspired together and organized the Germantown Insurance Company, to the end that it might acquire the assets of the Germantown Farmers' Mutual Insurance Company for the use and benefit of the former and the members of such conspiracy without the consent of the policy-holder members of the old organization, and the purpose of such conspiracy was accomplished, so far as creating the new organization and putting its members in possession of such property. Such new organization has paid a small part of the assets wrongfully acquired to members of the old company. Nearly all the stock of the new organization has been taken by the officers and directors of the old company, they thereby wrongfully acquiring to themselves the large property aforesaid, which belonged to the old organization and its members, leaving said members no security for payment of their policies, except that assumed by the new organization. Plaintiff has been denied access to the books of

the new organization, on which account he is unable to state
precisely the amount of unlawful gains which it secured by
the wrongful acts aforesaid. This action is prosecuted on the
behalf of plaintiff and all others similarly situated for the
benefit of the Germantown Farmers' Mutual Insurance Com-
pany, such company being made a defendant because its offi-
cers are the persons guilty of the mischief complained of, and
insist that the new organization has absorbed the old one,
leaving the latter incapacitated to maintain any action.

Upon such facts plaintiff prayed for an accounting by the
Germantown Insurance Company and the individual defend-
ants as to all their doings in the premises, and for restraint
upon them as to appropriating the good will of the German-
town Farmers' Mutual Insurance Company, or disposing of
or injuring its assets, and for a receiver to take over the as-
sets involved in the administration, and for general relief.

Separate demurrers were interposed to the complaint, first,
for want of jurisdiction over the defendants or the subject of
the action; second, for want of legal capacity to sue, in that
plaintiff has no legal right to call in question the power of the
defendant corporations or their officers to do any of the things
mentioned in the complaint, and has no interest in the sub-
ject matter of the action; third, for misjoinder of causes of
action; fourth, for insufficiency. The demurrers were sus-
tained and plaintiff appealed.

For the appellant there was a brief by *Lewis & Roach,* at-
torneys, and *Quarles, Spence & Quarles,* of counsel, and oral
argument by *T. W. Spence.* They contended, *inter alia,* that
the plaintiff in the action had legal capacity to sue. Secs. 3,
14, ch. 278, P. & L. Laws of 1854; sec. 1, ch. 215, Laws of
1870; *Schimpf v. Lehigh Valley Mut. Ins. Co.* 86 Pa. St.
376; *Mygatt v. Protection Ins. Co.* 21 N. Y. 52, 70; *Strong
v. Harvey,* 3 Bing. 304; *White v. Haight,* 16 N. Y. 310, 318;
*Lawrence v. Nelson,* 4 Bosw. 240; *Smith v. Hunterdon Mut.
F. Ins. Co.* 41 N. J. Eq. 473; *Carlton v. Southern Mut. Ins.*

*Co.* 72 Ga. 371; *Schwarzwaelder v. German Mut. F. Ins. Co.*
59 N. J. Eq. 589; *Dousman v. Wis. & L. S. M. & S. Co.* 40
Wis. 418; *Doud v. Wis., P. & S. R. Co.* 65 Wis. 108. Ch.
229, Laws of 1903, is unconstitutional. Secs. 10, 12, art. I,
Const. of Wis.; sec. 1, XIVth Amend. U. S. Const.; *Emerson
v. Nash,* 124 Wis. 369, 102 N. W. 921; *Grobe v. Erie Co.
Mut. Ins. Co.* 24 N. Y. Misc. 462; *Schwarzwaelder v. Ger-
man Mut. F. Ins. Co.* 59 N. J. Eq. 589; *Luther v. C. J.
Luther Co.* 118 Wis. 112.

For the respondents there was a brief by *Sawyer & Sawyer*
and *S. S. Barney,* and oral argument by *Mr. N. W. Sawyer*
and *Mr. Barney.* They contended, *inter alia,* that the assets
or property of a corporation belongs to the corporation as a
legal entity and not to the members. *Bent v. Hart,* 10 Mo.
App. 143; *Spurlock v. Missouri P. R. Co.* 90 Mo. 199;
*Mickles v. Rochester City Bank,* 11 Paige, 118. The word
"mutual," as applied to fire insurance companies, has a very
uncertain meaning. Under some charters there is a mutual-
ity as to liability for losses and expenses, as to liability in
the right to participate in the profits, if there be such, and'
mutuality in the right to vote, the number of votes being reg-
ulated by the amount of insurance. *Schimpf v. Lehigh Val-
ley Mut. Ins. Co.* 86 Pa. St. 376; *Carlton v. Southern Mut.
Ins. Co.* 72 Ga. 371; *Mygatt v. Protection Ins. Co.* 21 N. Y.
52, 70; *White v. Haight,* 16 N. Y. 310, 318; *Schwarzwaelder
v. German Mut. F. Ins. Co.* 59 N. J. Eq. 589. The rights and
liabilities of policy-holders are limited by the provisions of
their contracts and the law which controls the organization of
the company, and the plaintiff can assert no right not so
given. *Dewey v. Davis,* 82 Wis. 500; *Grobe v. Erie Co. Mut.
Ins. Co.* 53 N. Y. Supp. 628; *S. C.* 57 N. Y. Supp. 290;
*S. C.* 169 N. Y. 613; *Uhlman v. N. Y. Life Ins. Co.* 109
N. Y. 421, 429; *Block v. Valley Mut. Ins. Asso.* 52 Ark.
201, 20 Am. St. Rep. 166; *Carlton v. Southern Mut. Ins.
Co.* 72 Ga. 371. It is no part of the purpose of mutual fire

insurance companies to distribute a surplus among their members, and the members, when insuring, understand that to be the case. *Kennan v. Rundle,* 81 Wis. 212, 222; *Grobe v. Erie Co. Mut. Ins. Co.* 53 N. Y. Supp. 628; *White v. Haight,* 16 N. Y. 310, 318. The fact that mutual companies are somewhat of the nature of partnerships does not entitle the members thereof to share in the profits of the company. *Allen v. Winne,* 15 Wis. 113; *Dewey v. Davis,* 82 Wis. 500; *Uhlman v. N. Y. Life Ins. Co.* 109 N. Y. 421; *Grobe v. Erie Co. Mut. Ins. Co.* 57 N. Y. Supp. 290; *Alvord v. Barker,* 107 Iowa, 143, 77 N. W. 868; *Cohen v. New York Mut. L. Ins. Co.* 50 N. Y. 610, 623, 624; *People v. Security L. Ins. & A. Co.* 78 N. Y. 114; *Block v. Valley Mut. Ins. Asso.* 52 Ark. 201; *Titcomb v. Kennebunk Mut. Ins. Co.* 79 Me. 315, 9 Atl. 730, 732. The plaintiff, by the allegations of the complaint, admits that the mutual company has been re-organized into and is the defendant's stock corporation, by which it also admits that everything that was required to be done to accomplish that object was in fact done. Such being the case, it follows that the assets and liabilities of the mutual company are now the assets and liabilities of the stock company except as otherwise provided in ch. 229, Laws of 1903. *Knight v. Ashland,* 61 Wis. 233; *Nat. F. & P. Works v. Oconto City W. S. Co.* 105 Wis. 48, 53; *Mayfield v. Alton R., G. & E. Co.* 100 Ill. App. 614; *Manhattan F. Ins. Co. v. Fox,* 77 N. Y. Supp. 657, 660; *Barry v. Kansas City, Ft. S. & M. R. Co.* 52 Kan. 759, 776; *Brum v. Merchants' Mut. Ins. Co.* 16 Fed. 140; *Houston & T. C. R. Co. v. Shirley,* 54 Tex. 125; *Morrison v. Am. Snuff Co.* 79 Miss. 330. The complaint does not state a cause of action in equity upon its face. *Johnson v. Phenix Ins. Co.* 66 Wis. 50; *Hughes v. Hunner,* 91 Wis. 116; *Cannon v. Home Ins. Co.* 53 Wis. 585; *Lenz v. C. & N. W. R. Co.* 111 Wis. 198; *Schneider v. Menasha,* 118 Wis. 298; *Security Nat. Bank v. St. Croix P. Co.* 117 Wis. 211; *John V. Farwell Co. v. Wolf,* 96 Wis. 10;

Huber v. Martin, 127 Wis. 412.

*Allen v. Winne,* 15 Wis. 113, 118; *McElroy v. Minnesota P. H. Co.* 96 Wis. 317; *Alvord v. Barker,* 107 Iowa, 143; *Denver F. Ins. Co. v. McClelland,* 9 Colo. 11; *Hinckley v. Pfister,* 83 Wis. 64, 84; *Brown v. Duluth, M. & M. R. Co.* 53 Fed. 889; *Huntington v. Savings Bank,* 96 U. S. 388; *Alton R., G. & E. Co. v. Mayfield,* 95 Ill. App. 146; *People v. Security L. Ins. & Annuity Co.* 78 N. Y. 114, 122; *Dewey v. Davis,* 82 Wis. 500; *Davis v. Shearer,* 90 Wis. 250; *Gillman v. Druse,* 111 Wis. 400, 411; *Spalding v. North Milwaukee T. S. Co.* 106 Wis. 481, 489; *Milwaukee C. S. Co. v. Dexter,* 99 Wis. 214, 226; *Whitehill v. Jacobs,* 75 Wis. 474; *First Ave. L. Co. v. Parker,* 111 Wis. 1, 9; *Grobe v. Erie Co. Mut. Ins. Co.* 53 N. Y. Supp. 628; *Trisconi v. Winship,* 26 Am. St. Rep. 175–178. The complaint should be dismissed for laches and want of equity. *Holden v. Meadows,* 31 Wis. 284, 291; *Butler v. Mullen,* 100 Mass. 453; *Eustis v. Bolles,* 146 Mass. 413; *Melms v. Pabst B. Co.* 93 Wis. 174; *Sterns v. Page,* 7 How. 819, 829; *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392; *Van Beck v. Milbrath,* 118 Wis. 42, 46; *Bong v. Parmentier,* 87 Wis. 129; *Fuller v. Melrose,* 1 Allen, 166; *Newcomb v. Reed,* 12 Allen, 362; *Covington & L. T. R. Co. v. Sandford,* 164 U. S. 578; *Beckman v. Consolidated T. Co.* 114 Fed. 232, 254; *Dannemeyer v. Coleman,* 11 Fed. 97; *Tanner v. Lindel R. Co.* 180 Mo. 1, 79 S. W. 155; *Zabriskie v. Cleveland, C. & C. R. Co.* 23 How. 381, 401; *Kent v. Quicksilver M. Co.* 78 N. Y. 159; *Martin v. Pensacola & G. R. R. Co.* 8 Fla. 370, 73 Am. Dec. 713; *State ex rel. Columbus v. Mitchell,* 31 Ohio St. 592; *Tash v. Adam,* 10 Cush. 252; *Lauman v. Lebanon Valley R. Co.* 30 Pa. St. 42; *Duke of Leeds v. Amherst,* 2 Phill. Ch. 117, 123; *Luther v. C. J. Luther Co.* 118 Wis. 112, 125; *Schwarzwaelder v. German Mut. F. Ins. Co.* 59 N. J. Eq. 589; *Strong v. McCagg,* 55 Wis. 624; *Michelson v. Pierce,* 107 Wis. 85; *Stein v. Benedict,* 83 Wis. 603; *Uhlman v. N. Y. Life Ins. Co.* 109 N. Y. 421. Ch. 229, Laws of 1903, is a valid enactment.

*Bent v. Hart,* 10 Mo. App. 143; *Spurlock v. Hart,* 90 Mo. 199; *Mickles v. Rochester City Bank,* 11 Paige, 118; *Uhlman v. N. Y. Life Ins. Co.* 109 N. Y. 421; *People v. Security L. Ins. & A. Co.* 78 N. Y. 116; *Grobe v. Erie Co. Mut. Ins. Co.* 53 N. Y. Supp. 628; *S. C.* 57 N. Y. Supp. 290; *S. C.* 169 N. Y. 613; *State Bank v. State,* 1 Blackf. 267; *Att'y Gen. v. Gower,* 9 Mod. 224; *Titcomb v. Kennebunk Mut. Ins. Co.* 79 Me. 315, ·9 Atl. 730; *Bank of Miss. v. Duncan,* 56 Miss. 166; *Acklin v. Paschal,* 48 Tex. 147; *Smith v. Hunterdon Mut. F. Ins. Co.* 41 N. J. Eq. 473; *Mason v. Ashland,* 98 Wis. 540, 545; *Nat. F. & P. Works v. Oconto City W. S. Co.* 105 Wis. 48, 53; *Schwarzwaelder v. German Mut. Ins. Co.* 59 N. J. Eq. 589. In order to entitle a person to challenge an act of the legislature as unconstitutional and, therefore, invalid, he should be required to show that some substantial right was violated or infringed. The fact that he may be able to spell out some contractual right should be held insufficient if such right be manifestly valueless and of no benefit to him. The test as to whether a contract has been impaired is whether the value has been diminished. A contract made subject to an amendment is not impaired by such amendment. *West Wis. R. Co. v. Supervisors,* 35 Wis. 257, 272; *Oshkosh W. W. Co. v. Oshkosh,* 109 Wis. 208, 215; *Peninsular L. & C. Works v. Union O. & P. Co.* 100 Wis. 488, 491; *Second Ward Sav. Bank v. Schranck,* 97 Wis. 250, 262; *Grobe v. Erie Co. Mut. Ins. Co.* 53 N. Y. Supp. 628; *S. C.* 57 N. Y. Supp. 290; *S. C.* 169 N. Y. 613; *Wright v. Minnesota Mut. L. Ins. Co.* 193 U. S. 657; *Spring Valley W. W. Co. v. Schottler,* 110 U. S. 347; *Shields v. Ohio,* 95 U. S. 319; *Green v. Biddle,* 8 Wheat. 1; *Nugent v. Supervisors,* 19 Wall. 241–251; *Buffalo & N. Y. C. R. Co. v. Dudley,* 14 N. Y. 336; *Hale v. Cheshire R. Co.* 161 Mass. 443; *Bishop v. Brainerd,* 28 Conn. 289; *Pennsylvania College Cases,* 13 Wall. 190; *Bailey v. Hollister,* 26 N. Y. 112; *Stewart v. Erie & Western Transp. Co.* 17 Minn.

372; *Supreme Lodge Knights of Pythias v. Knight,* 117
Ind. 489.

The following opinion was filed January 30, 1906:

MARSHALL, J. Counsel for the respective parties, as we
view the complaint, in effect, take issue as to their rights on
this state of facts: A purely mutual company was organized
under a charter providing that policy-holders only should be
members thereof. It conducted its business for some fifty
years. In that time it accumulated a surplus of over
$200,000. At the time of the commencement of the action
and during the re-organization acts hereafter mentioned,
plaintiff was a member of the company. The entire member-
ship at the time of such proceedings constituted but a small
proportion of those who had joined the company from the
beginning. The legislature, after the surplus was substan-
tially as indicated, enacted a law in terms authorizing such
a company to be turned into a stock corporation at the
option of two thirds of its existing policy-holders represent-
ing not less than one half of its outstanding insurance. It
did not recognize such policy-holders as having any greater
several interests in the corporate property, or rights to par-
ticipate in the taking of stock in the re-organized company,
than past policy-holders, or treat them as being the owners
of the corporate property and business, or having any in-
terest therein worthy of being sought after in the re-organiza-
tion proceedings, or as a result thereof, or policy-holders, past
and present, as having, in the aggregate, rights in such prop-
erty equivalent to but a small proportion of the whole thereof,
or of a character reasonably probable to be realized upon.
The scheme in its entirety was such that its execution in any
case would probably or necessarily result in bestowing the
net assets over liabilities of the company upon the new or-
ganization, and indirectly upon the promoters thereof as a
mere gratuity. The officers of the Germantown Farmers'

Mutual Insurance Company became the promoters of the Germantown Insurance Company, as a re-organization of the former, for the purpose of enabling the new creation to acquire directly, and themselves to acquire indirectly, without consideration, the surplus assets of the old company. They fully executed such purpose as regards acquiring actual possession of such property and using the same as that of the new company. The plaintiff and others similarly situated did not consent thereto.

Counsel for respondents by their attitude in printed and oral arguments accepted the situation stated, affirming that the conduct complained of is justifiable on principle and authority, that it is neither a wrong to appellant or to anyone else, of sufficient dignity at least to be a subject for judicial redress at his suit or that of any other party; that it is not even one of those wrongs from the standpoint of good morals, laying one liable to the condemnation of his fellow-men; and that, if it were otherwise as an original proposition, it is not a wrong under the circumstances by force of legislative authorization within its legitimate field. Counsel for appellant as confidently assert the negative, maintaining that the acts of the legislature involved, and to which respondents point for their justification, is a clear usurpation,—is within the condemnation of the letter and spirit of the constitution, state and national, and of elementary and judicial authority as well.

The very statement of the position which must be maintained in order to defeat the complaint as insufficient to show any wrongdoing as regards the appellant of which he can be judicially heard to complain in the manner attempted, or at all, at first sight, we must confess, so shocks the moral sense that one is inclined to enter upon a study of the subject with the impression that no substantial basis can be found for it in the law. As a rule, one can rightly acquire property only by gift *inter partes* or operation of law, or by finding or le-

gitimate reduction to possession of things belonging to the people in the sovereign capacity, or by estoppel or by adverse possession, or by creating it by one's own energy, or that in connection with his private capital, or such and the capital of others legitimately secured, or by purchase. To obtain property in any other way one must needs pass beyond the boundary line between right and wrong, measured by legal standards. It is quite probable that there have been many excursions beyond that line, and many more beyond the line dividing right from wrong, tested by purely moral standards, in the administration of insurance trusts of different sorts,— some of the kind involved here and some having the stock feature of ownership,—the officers, or those connected with them, with their connivance or consent, or both, in various ways depleting the trust fund or using it for their private enrichment as never contemplated by the policy-holders, or the organic acts of the corporate creation. Such occurrences, whether viewed in their moral or legal aspects, as regards facility for transferring trust property to the private use of its chosen guardians, pale before the possible happenings, if the stated case must be stamped with judicial approval. In that contingency nothing stands in the way but the uncertain will of the legislature, of the officers of our great mutual life insurance company, if they should be so inclined, so manipulating things as in time to reduce to their private ownership the great wealth constituting its surplus fund, and reducing to like ownership the good will of the insurance business itself, which has been built up by wise management and the patronage of the people through a period of more than half a century. The very thought that such a result would be possible if the law is as contended for by respondents' counsel, suggests the existence of such serious infirmity in our constitutional guarantees as regards property rights that one could not well conclude that they exist, except in the face of some unmistakable demonstration.

To give added emphasis to what has been said we will turn to ch. 229, Laws of 1903, under which respondents justify, showing that the result of executing the law in the case in question would produce all the dire results to the parties in interest above suggested.

The company was organized in 1854. It had done business for forty-eight years at the time of the acts complained of. At the end of such period, as appears by the last public record, the amount of unexpired risks was $2,922,889. The amount paid for carrying such risks was $42,331.32. The length of the policy periods was about as follows: one fourth one year, one half two years, and one fourth five years. The total amount of premium assessments paid into the company's treasury from its organization was $896,558.64. Assuming that the average rate for carrying risks for the entire period of the company's existence was substantially the same as for the last five years thereof the total amount of risks from the beginning was approximately $63,334,000, indicating that at the time of the attempted re-organization the number of policy-holders and the amount of risks then in force was to the total number of persons who became members of the company from the start, and the total amount of risks carried during the entire period, as one to twenty-two. The re-organization act provided as follows:

"Sec. 1. Any mutual fire insurance corporation, organized under any law of this state" circumstanced as the one in question "may, with the consent in writing of two thirds (⅔) of the members of such corporation representing not less than one half of its outstanding insurance, become a stock corporation, by proceeding in accordance with the provisions of the statutes of this state regulating the organization of stock fire insurance corporations.

"Sec. 2. Every member of such corporation on the date of said annual or special meeting shall be entitled to priority in subscribing to the capital stock of such corporation, for one month after the opening of the books of subscription, and in the proportion that the amount of cash premium paid in by

such member .bears to the total amount of risks in force on the date of said annual or special meeting; provided, that if any one of the past or present members shall not subscribe for stock, then the said corporation shall, upon application, within ninety (90) days return to him his equitable proportion of the surplus of the company, to be computed by an actuary to be employed by the corporation for that purpose.

"Sec. 3. No part of the assets of such mutual fire insurance corporation shall be divided among the members thereof, but shall, after such re-incorporation, become the property of such stock corporation, to be expended by it for the ordinary disbursements of the company, in carrying on its business, including the payment of losses incurred upon its policies; and all property of such mutual fire insurance corporation shall be transferred to such stock corporation, organized as aforesaid, in the manner provided by law."

It will be observed that one month only was allowed after the opening of the books for subscriptions for stock in the new corporation for members of the old company to become subscribers. That contemplated that all persons who had become members of the company during the forty-eight years of its existence, and who were living, and the personal representatives or the heirs wherever they might be, of those who were dead, should exercise the right afforded by the act to take stock in the corporation within the thirty days named. No provision, however, was made for any notice to the possible beneficiaries of the opening of such books, nor as to the amount of capital stock of the new corporation. All that was left to the custodians of the property and business of the old concern, who presumably were to be, and who in fact became, the promoters of the new organization. The complaint does not state what amount of stock was finally determined upon for the new organization. It could not have been less than $100,000, for that is the minimum fixed by the statute. It is safe to assume, probably, that it was fixed at that sum. So it appears by computation that every one of the existing policy-holders was afforded the opportunity, if he should de-

sire and discovered his rights in time, to take stock to the amount, approximately, of fifty cents for each $1,000 of insurance carried. The rate would be substantially the same as applied to all persons who became policy-holders from the beginning. If all the existing policy-holders improved the very uncertain and wholly valueless opportunity to take stock, it would exhaust about $1,500 thereof. If all those possessing membership rights at any time during the existence of the company improved the opportunity afforded by the act to take stock, it would exhaust about $31,667 thereof, or somewhat less than one third. Thus it will be seen that the promoters of the enterprise and, in contemplation of law, the members of the legislature in passing the act must have proposed from the start the appropriation for the use of such promoters of all the assets of the old company, alleged in the complaint to amount to some $250,000, and $211,375.76 in excess of all liabilities, actual and contingent, since the amount above secured to each policy-holder was too trifling to be called for.

The act treated, as before indicated, every one as having a membership right who at any time held a policy in the corporation and entitled to the same consideration as any other member. Provision was made, in form, to enable each one having any such right to claim a part of the surplus, in case of his failing to take advantage of the valueless opportunity indicated, to take stock, but such provision was likewise valueless as will be seen. As a condition of any past or present member obtaining any part of the surplus he was required to be vigilant and make application therefor, and then to take such sum for his appropriate share as the company's actuary might deem equitable. Obviously, if the legislative basis for subscription rights of members were taken as the equitable standard for measuring rights to the surplus, the amount coming to each member would not be worth the trouble required to obtain it. It must be presumed that the legislature

intended to preserve to those desiring to become members of the new organization their equitable rights in that regard according to its views in respect thereto. In that light no reason is perceived why, if the company's actuary saw fit to use such standard, it would not be justified, if the act of the legislature is valid. In any event, since past as well as present members are required to be considered, only about one twenty-second, or $9,545, of the surplus could be awarded to present members, if the entire surplus were to be considered as a fund for distribution among members, past and present. That would afford about thirty-one cents per $1,000 of risk carried by the company. Thus, it will be seen, it would be a reflection upon every one concerned in passing the act in question and executing it, to entertain the idea that they seriously thought the result of administering it to the company in question would be otherwise than a bestowal upon the new corporation of the legal title, and upon the managing agents of the old company,—the custodians of its property,—who would naturally, and did actually, become the organizers of such corporation, the equitable ownership of all property and business of the old company as a mere gratuity.

If what has been said needs reinforcement sec. 3 of the act furnishes it. That is sufficiently significant to bear repeating at this point:

"No part of the assets of such mutual fire insurance corporation shall be divided among the members thereof, but shall, after such re-incorporation, become the property of such stock corporation, to be expended by it for the ordinary disbursements of the company in carrying on its business, including the payments of losses incurred upon its policies."

How could all the property of the old organization become that of the new one, *"to be expended by it for its ordinary expenses,"* no part being divided among the members of the old organization, and yet such members obtain their equal proportion under the second section of the act? The only

conclusion reachable, it seems, is that the author of the legislation did not give any thought to the subject of the second section as to its requiring any efficient distribution of the surplus.  It could not be distributed as property of the old organization and at the same time be covered into the treasury of the new one for its ordinary disbursements in payment of its debts, expenses, and policies.  So it is plain, not only from the spirit but the letter of the act, that the purpose thereof was to make a gift of the property of the old organization to the new one, the same being regarded as disposable at the will of the legislature.

In respect to the peculiar features before referred to there is no similar law anywhere, so far as we are able to discover. Counsel for respondent place great reliance on *Grobe v. Erie Co. Mut. Ins. Co.* 24 Misc. 462, 53 N. Y. Supp. 628, affirmed 39 App. Div. 183, 57 N. Y. Supp. 290, which will be discussed at some length hereafter.  As suggested by counsel for appellant, the law there, quite unlike the one before us, dealt with existing members of the old organization as, in the aggregate, the equitable owners of its assets and entitled to become the owners of all of the stock of the new corporation.  The total amount paid into the corporate treasury was deemed to stand for all the stock in the new organization. Each policy-holder was secured the right to take such proportion of the entire stock as the amount paid by him on unexpired insurance bore to the aggregate of all sums so paid by existing members.  Laws of N. Y. 1896, ch. 850.  We venture to say that, except in the one instance before us, no law has been enacted for converting a mutual insurance company, or other non-stock organization, into a stock company, not recognizing the members of the old company as its owners and entitled to be recognized as such in the organization of the new one.

Proceeding logically the next question to be taken up is this: Who were the members of the Germantown Farmers'

Mutual Insurance Company at the time of the attempted re-
organization? The law of its creation answers that most
distinctly, if effect is to be given to the plain letter thereof.
Sec. 3, ch. 278, Laws of 1854, provides that "every person
who shall at any time become interested in said company by
insuring therein, and also his heirs, executors, administrators
and assigns, continuing to be insured therein . . . shall be
deemed and taken to be members thereof for and during the
terms specified in their respective policies, *and no longer."*
With language so plain it seems useless to spend time en-
deavoring by construction to read some idea out of it not
found in its letter. Words which are plain, both in them-
selves and when applied to the subject with which they deal,
in that they lead to no absurd consequence, must be taken
according to their ordinary import, nothing being added there-
to or taken therefrom. *State ex rel. Heiden v. Ryan,* 99 Wis.
123, 74 N. W. 544; *Gilbert v. Dutruit,* 91 Wis. 661, 65 N.
W. 511. The quoted language was changed somewhat by
the amendatory act of 1878. Ch. 306, Laws of 1878. The
law as changed retained all the significant words of the
original act or used equivalents so as to make the dominant
features more prominent. The act is in harmony with ele-
mentary principles. If it were not for the emphatic declara-
tion the result would be the same in the absence of some pro-
vision of the charter to the contrary. It is thus laid down
by text-writers, based on authority: "Membership dates in
each case from the time when the insurance is effected" and
"membership in the mutual insurance company ceases upon
the termination of the policy." 21 Am. & Eng. Ency. of
Law (2d ed.) 264–266.

From the foregoing it is evident that whatever private in-
terests there were in the assets of the Farmers' Company
over and above sufficient to satisfy its liabilities, were the
property of persons holding unexpired policies therein, and
that part of the legislation under which respondents seek to

justify the attempt to dispose of the corporate property with-
out their consent must stand the same test as any legislative
attempt to take property of one person and give it to another,
or to impair contractual rights. We are not unmindful of the
authorities called to our attention, which will be as fully as
need be referred to hereafter, for support for the doctrine
that there is something peculiar respecting the ownership of
property of a mutual insurance company rendering it a sub-
ject of legislative disposal, or distribution by equity jurisdic-
tion on the basis of recognizing all contributors to the fund,
regardless of whether they are actual members of the com-
pany at the time thereof or not. We are unable to see any
logical foundation in reason or in good law for any such doc-
trine.

Where is the ownership of the net assets of a mutual insur-
ance company located? That the legal title is in the corpora-
tion goes without saying. The rule in that regard must be
the same in case of one corporation as another. Why is not
the equitable right,—the real beneficiary interest,—independ-
ently of the corporate use, vested in the members of the cor-
poration in one case the same as in the other? It would
seem that, after the corporate purposes are exhausted, the
property of every business corporation belongs to its mem-
bers, is self-evident. It is no answer to the proposition to
say, no member has "any aliquot part of the corporate as-
sets subject to identification, conservation and recovery,"
for that is true as to any corporation. It is likewise no an-
swer to say, it is no part of the business of a purely mutual
insurance company to distribute its profits among the mem-
bers, unless that is provided for by the contract or the or-
ganic act. Unless prohibited from doing so, such a corpora-
tion, in the event of its accumulating a needless surplus, may
distribute the same to its members (*Mygatt v. N. Y. P. Ins.
Co.* 21 N. Y. 52, 65), and may make such distribution at such
times and to such extent as the governing authority may de-

termine. *Equitable Life Assur. Soc. v. Host,* 124 Wis. 657, 102 N. W. 579. Indeed no reason is perceived why such an insurance company may not make rates with a view to the probable accumulation of a surplus and the distribution of so much thereof, from time to time, as may appear from experience not to be needed. Moreover, it may be that such distribution would be due to members and enforcible in case of the surplus being unreasonably large, as there is reason to believe it was in this case. Why was the company carrying a surplus equal to over six per cent. upon the face of its policies and more than five times' the amount paid into the corporate treasury on account thereof? Assuming the management was honest, does it not look as if the rates were made with a view to the probable accumulation of a surplus and probable dividends to members therefrom? The logic of counsel's argument at this point seems to fail entirely.

However, the question at issue is not what right a member of a corporation of the sort under consideration, while it is a going concern, has in its net assets, but what right has he when it ceases to do business; when its property must necessarily pass out of its hands, though his interest in the latter situation would appear to be more appreciable in case of a surplus accumulated in contemplation of a distribution thereof to members than otherwise. Obviously, if he has an equity in the surplus, whenever it is no longer needed in any reasonable view for the corporate business, the right to realize thereon must exist.

The authorities supporting the last foregoing are not numerous. One would not expect them to be on a matter which so appeals to one's common sense as necessarily right upon fundamental principles. However, harmonious quotations from text and judicial authorities could be given at great length. To illustrate: "The principle which lies at the foundation of mutual insurance, and gives it its name, is mutuality; in other words, the intervention of each person

insured in the management of the affairs of the company, and the participation of each member in the profits and losses of the business, in proportion to his interest." 2 May, Ins. (4th ed.) § 548. "Each person insured becomes a member of the body corporate, clothed with the rights and subject to the liabilities of a stockholder." Id. § 548; 21 Am. & Eng. Ency. of Law (2d ed.) 267; *Korn v. Mut. Assur. Soc.* 6 Cranch, 192. "Although the members of a mutual company are not usually denominated stockholders, and are not stockholders in the usual sense of the word, yet they are in point of fact stockholders." 2 May, Ins. (4th ed.) § 549. "The property of the corporation belongs to its members." Opinion of district judge in *Temperance Mut. Ben. Asso. v. Home Friendly Soc.* 187 Pa. St. 38, 44, 40 Atl. 1100. "There is nothing to prevent a mutual company from carrying on its operations with a view to profits and dividends." *Mygatt v. N. Y. P. Ins. Co.* 21 N. Y. 52, 66. In *Riddell v. Harmony Fire Co.* 8 Phila. 310, the distribution of the assets, not surplus, of a mutual organization was enjoined at the suit of a member on the ground that such distribution was improper, except on surrender of the charter or dissolution of the corporation. The case proceeds upon the ground that the property of a non-stock corporation, not public, needed for its business belongs to the members, but not recoverable, of course, in possession, so long as the corporation is a going concern. The title to the property in any corporation—the substantial beneficial ownership—is in its members. 1 Clark & M. Priv. Corp. 23.

*Titcomb v. Kennebunk Mut. F. Ins. Co.* 79 Me. 315, 9 Atl. 732, relied upon by counsel for the respondents, is in harmony with the foregoing, notwithstanding some discussion, which will be referred to hereafter. The case went upon the ground that there were no existing policy-holders. The last policy had expired. It was absolutely without membership.

In *Carlton v. Southern Mut. Ins. Co.* 72 Ga. 371, it was

held, generally, that a member in a mutual insurance non-stock company, in the absence of charter regulations, is entitled to participate in any lawful distribution of its surplus on the basis of a partnership agreement. It was said, quoting from the syllabus:

"A mutual insurance company is based on the idea that each of the assured becomes one of the insurers, thereby becoming interested in the profits and liable for the losses. Without a charter, such an organization would be governed by the general law of partnership."

In the case in hand the distributees were held to include all stockholders, and that the word "stockholders" under the terms of the charter included every person who had contributed to the fund on hand, whether holding any unexpired insurance or not. That conclusion was reached based on language peculiar to the charter. It has no application whatever to such a charter as the one in question on that point.

It does not seem best to spend further time on the branch of the case last treated. We hold that there is no difference between business corporations as regards ownership of property. In the general sense, every member of a mutual corporation is a stockholder and is the equal of any other member similarly situated, or any member of any corporation having an equal interest, proportionally, as to holding the beneficiary title to the corporate assets. For corporate purposes only the corporate entity owns the property, otherwise it belongs to the members. No principle of law is more firmly founded in reason, and none more important to be kept in bold relief by courts so as to challenge the attention of those who have to do with corporate affairs, especially corporations dealing with the subject of insurance. The officers of such a concern have no greater authority over its assets, as regards appropriating the same to their private use, than those in other corporations. Neither does legislative power legitimately extend to interfering with property rights more in

one case than in the other.   False notions of this matter, which may be, perhaps, attributed in part to courts, has led to the erroneous idea that the members of a mutual insurance company have no rights save those expressed on the face of their policies; that otherwise they have no interest in the corporate assets which the courts will protect.   That is a very erroneous and very dangerous doctrine.   Nothing will be more productive of good administration of such concerns as the one under discussion, than to have it definitely proclaimed by the courts, as we do now, that, while the corporate property belongs to the corporation for corporate purposes, the corporation itself belongs to the members thereof, and that any such member, however small his interest, may knock successfully at the judicial doors to prevent the use of the corporate assets in any other way than in strict harmony with what has been said.   If such were not the case, wrongs of a serious nature would quite likely go without redress and rights without protection.

But it is said that under the reserved power in the constitution what the legislature may create, as regards corporate organizations, it may alter or destroy, and that as it may provide for the dissolution of a corporation it may also provide for the disposition of its assets.   Regardless of the legislative control suggested, the law-making body has no authority to appropriate private property to the use of the state, except under the taxing or police power, or power of eminent domain, or to a private party.   There can be no confiscation of corporate any more than of individual property.

"Corporations are persons within the meaning of the constitutional provisions forbidding the deprivation of property without due process of law as well as a denial of the equal protection of the laws."   *Covington & L. Turnp. R. Co. v. Sanford,* 164 U. S. 578, 17 Sup. Ct. 198; *Pembina Con. S. M. & M. Co. v. Pennsylvania,* 125 U. S. 181, 189, 8 Sup. Ct. 737; *Santa Clara Co. v. Southern Pac. R. Co.* 118 U. S. 394, 6 Sup. Ct. 1132.

We are cited to the supposed ancient rule of the common law that upon the termination of a corporation its real estate reverts to the grantor and its personalty to the sovereign and that its debts become extinguished. Some bearing is claimed for that. While it has some distinguished support in modern times (2 Kent, Comm. *307), it long since became obsolete, if it ever was the law, except as regards public corporations. It was distinctly repudiated by this court in *Lindemann v. Rusk,* 125 Wis. 210, 104 N. W. 119, 124. The authorities supporting such repudiation are substantially without conflict. *Late Corporation (Mormon Church) v. U. S.* 136 U. S. 1, 47, 10 Sup. Ct. 792; 3 Purdy's Beach, Priv. Corp. § 1327; 2 Cook, Corp. (5th ed.) § 641; 2 Morawetz, Priv. Corp. (2d ed.) § 1032; 5 Thompson, Corp. § 6746. American courts have, except in a very few instances, never recognized the doctrine, and quite recently it was held by the Court of Queen's Bench in Bankruptcy that it never had any place in the common law of England. In *In re Higginson & Dean* (1899) 1 Q. B. 325, 79 L. T. Rep. 673, WRIGHT, J., said that no instance was recorded in the books where such doctrine was ever applied by any English court and referred to an American decision, *Bank of Vincennes v. State,* 1 Blackf. (Ind.) 267, where the contrary was held, as having been reasoned on a false basis. We may safely close this branch of the case by saying that, aside from *dicta* here and there, in the whole not worthy of serious consideration, there is no legitimate support anywhere for the rule that the property of a business corporation upon its termination and the payment of its debts goes otherwise than to its members, if it has members to take. It is quite remarkable that the ancient rule should, for well nigh two centuries, have been confidently asserted from time to time by judges and text-writers as the law, including writers of such eminence as Bacon, Kyd, and Kent, have first been repudiated quite unanimously in America, and then be declared in the supposed place of its origin to

never have been a part of the common law. Here, the language of Justice BRADLEY, in *Late Corporation (Mormon Church) v. U. S.* 136 U. S. 1, 17, 10 Sup. Ct. 792, confining the application of the supposed ancient rule to public corporations, has been universally adopted.

We should not pass wholly from this subject without referring to the fact that so learned a writer as Judge Elliott in his valuable work on Private Corporations at sec. 606, adds to the corporations specified by Justice BRADLEY, to which the supposed ancient rule now applies, mutual insurance companies, referring to *Titcomb v. Kennebunk Mut. F. Ins. Co.* 79 Me. 315, 9 Atl. 732, and *Cummins v. Hollis,* 108 Ga. 402, 33 S. E. 919. The *Titcomb Case* is also referred to in 2 Clark & M. Corp. at sec. 328, but without approval so far as bearing on the question in hand. It is unfortunate that so careful a writer as Judge Elliott should have lent his distinguished approval to the cases cited by adopting the construction thereof which he incorporated into his text. An examination of *Cummings v. Hollis, supra,* shows that it went distinctly upon the ground that the corporation was public. It was based on the decision in *Mason v. Atlantic Fire Co.* 70 Ga. 604, which involved also a public corporation. By implication the *Hollis Case* held that in case of the dissolution of any corporation not public the net property would go to its members, using this language: "On the dissolution of a corporation of this character, its assets are appropriated in other ways than by a division among its members." 'In harmony therewith the same court said in *Dade C. Co. v. Penitentiary Co.* 119 Ga. 824, 829, 47 S. E. 338, 340: "The mere fact that a corporation has no capital stock does not necessarily deprive its members of their proportionate rights in the corporate property."

True, in *Titcomb v. Kennebunk Mut. F. Ins. Co., supra,* the supposed ancient rule of the common law was quoted with approval. That fact, as it appears, has been a disturbing ele-

ment in the preparation of text-books and in the decisions of some courts, but the fact remains that it was not applied to the case in hand. It was held, as before indicated, that the property escheated to the state because all the policies had expired and, therefore, the corporation was without membership. The idea was there met that in a distribution of a surplus by a corporation all persons who have ever been members of the company should be recognized, and it was said that such a rule for the distribution of corporate assets is entirely impracticable, as we have heretofore said. This language was used: "To distribute among them a small amount of assets, and to determine what each former policy-holder's share ought in equity to be, would be attended with difficulties and an amount of labor which the end would not justify."

It should be noted that in *Smith v. Hunterdon Co. Mut. F. Ins. Co.* 41 N. J. Eq. 473, 4 Atl. 652, the rule of distribution condemned in the Maine case was adopted by a process of reasoning not deemed to be logical. It ignored the obvious fact that the members of a corporation, and the members only, own the corporation and that it is not permitted to any court upon its own notions of equity to take any part of the corporate property and distribute it to those not members. If the rule were applicable in any event, it could not be to a corporation whose charter expressly provides, as in this case, that only persons holding unexpired risks shall be deemed members. The New Jersey court was evidently persuaded to the course adopted by *Carlton v. Southern Mut. Ins. Co.* 72 Ga. 371, failing to observe that it turned upon a construction of language in the charter which the court felt bound to hold was used to make every one who contributed to the corporate surplus a member, or stockholder, as was said, for the purposes of any distribution of such surplus.

No hardship can result to members of a mutual insurance company from their relation with the organization being considered as above stated. Every policy-holder knows, or ought

to know, that he will remain a member so long as he remains a policy-holder and no longer. He knows, or ought to know, that as soon as his membership relation is established he becomes possessed of an equitable interest in the assets of the company consisting of all accumulations prior to his time, and such as may be added thereto during his membership, but which cannot be realized on in possession in the absence of a necessary distribution of the surplus on account of the company going out of business, or in some proper way. He knows, or ought to know, that it is entirely optional with him whether to preserve his interest in the company and thereby protect his contingent rights, or to allow them to lapse by ceasing to be a member. He also knows, or ought to know, that in case of his interest so lapsing it will inure to the benefit of those associated with him who choose to retain their memberships and those who come after him, the doors of the company swinging freely to let in new members and to let old ones out according to choice, those at any moment of time being then and then only the owners of the company to all intents and purposes the same as members of any other corporation.

To summarize at this point: The members of the Germantown Farmers' Mutual Insurance Company at the time of the proceedings under ch. 229, Laws of 1903, to supersede it by a new corporation, denominated the Germantown Insurance Company, were the persons then having unexpired policies in the former. For all except corporate purposes they were the beneficial owners of its assets. In case of its being wound up the net assets constituted a fund for distribution between the members according to their respective contributions to the company's treasury. In case of any distribution of its surplus, other than following a dissolution, they were entitled to so participate. The surplus in excess of the reasonable needs of the corporation was a proper subject for distribution at any time. The right of the corporation to hold

its property in harmony with that situation, and the rights of the members to have the same so held and administered, were property interests resting on contractual obligations and so within the guaranty of the state constitution as regards the passage of laws impairing the obligations of contract, sec. 12, art. I, Const. of Wis., and that of the national constitution as regards the deprivation of property without due process of law, or denying to persons the equal protection of the laws. XIVth Amend. U. S. Const. Due process of law does not extend to the taking of private property or the violation of private rights for private ends. The act of the legislature in question, in terms or in effect, authorizes the appropriation of the property of one private corporation and the equitable interests therein of the members thereof to the use of another private corporation and of its members in violation of the corporate charter rights of the former corporation, and in defiance of the wishes of such of its members as do not choose to consent thereto. The proposition affirmed by counsel for respondents, stated at the outset in the opinion, must, therefore, be answered in the negative. The act of the legislature, ch. 229, Laws of 1903, is unconstitutional and void and furnishes no justification for the acts complained of. To that extent the complaint states a good cause of action and should have been sustained.

All cases and the authorities, generally, so far as we can discover, not excepting the one to be presently specially mentioned, upon which counsel for respondents mainly rely, are in substantial harmony as regards members of a corporation of the sort under discussion being the owners of the corporate property, subject to the corporate purposes, in the absence of some charter provision to the contrary, as we have held. If there was want of harmony as to who are to be deemed members of a corporation of the kind in hand, in the absence of a charter provision on the subject, it would not be material in this case since the charter here expressly provides that only

the holders of unexpired policies can be deemed to be members.

We have thought best to proceed to this point without referring to the decision most confidently relied upon by counsel for respondents,—*Grobe v. Erie Co. Mut. Ins. Co.* 24 Misc. 462, 53 N. Y. Supp. 628, affirmed 39 App. Div. 183, 57 N. Y. Supp. 290, or the one on which with equal confidence counsel for appellant rely,—*Schwarzwaelder v. German Mut. F. Ins. Co.* 59 N. J. Eq. 589, 44 Atl. 769, because the former, when rightly understood on the main point,—that as to the validity of legislation providing for the trans-. fer of the property of one corporation to another and the substitution of the latter for the former without the consent of all of the members of the old corporation,—is entirely inapplicable to the case before us from the attitude of respondents, and is in harmony with the case relied upon by appellant, as we shall see, and both bear on the question yet to be treated of, whether if the appellant has a ground of complaint he invoked the proper remedy.

Before proceeding to the next point we will state briefly our view of the above cited New York case on the main question. The court there met this situation: The insurance company sought to be superseded was formed in 1874 under a general law. There was a re-organization law then in force substantially like the one here, except that it treated all policy-holders of any mutual company sought to be superseded, at the time of the re-organization proceedings, owners of the company as regards the right to take the entire stock in the new corporation. In short, it contemplated the substitution of one corporation for another without any change of membership, except at the option of the members of the old corporation. When the subject of dispute was organized there was a system of laws on the statute books, originating as early as 1853 and continued to and inclusive of the re-organization proceedings, authorizing any mutual insurance company by

consent of two thirds of its members to re-organize on the stock plan. The law in that regard, as the court held, be-·came, by implication, at the creation of the charter of the corporation sought to be superseded a part of such charter. The court said that every person who participated in the re-organization knew of the fact, or ought to have known of it, ·and that by joining the company he impliedly agreed to submit to a re-organization of it at any time in the future when-·ever the requisite two thirds of its members so desired and the legal requirements in the matter were complied with. The result was that the re-organization was sustained solely on· the ground that the re-organization proceedings were in harmony with the charter of the corporation sought to be super-·seded. That, as it will be observed, is in perfect harmony with the decisions as regards laws authorizing the turning of ·voluntary organization into corporate entities. We have just held, *Spiritual and P. Temple v. Vincent, ante,* p. 93, 105 N. W. 1026, that such re-organization law as to corporations antedating its passage cannot disturb their property rights. That is in harmony with authorities generally. *Schiller ·Commandery v. Jaennichen,* 116 Mich. 129, 74 N. W. 458. The difficulty with the position of counsel for respondents, ·as regards the New York case, is this: There was a re-organi-·zation act preceding the corporate charter and was in effect a part of it, while here the re-organization act came after the ·charter, and, therefore, if given effect, is a modification of it interfering with vested property rights. The vital part is not the change of the charter but the confiscation, so to speak, of the corporate property. Inferentially the New York court held that in the circumstances we have here the re-organiza-·tion law could not be sustained.

Turning to the New Jersey case, upon which counsel for ·appellant rely, the situation before the court was precisely like that here. There was no provision, express or implied, in the charter of the corporation sought to be superseded author-

izing a re-organization without the consent of all its members,. or at all. The re-organization act, the same as here, came subsequent to the corporate charter. The corporation was: formed in 1893. The plaintiff became a member thereof in 1898. The re-organization act was passed in 1899. The court held that such act, as regards authorizing a new corporation to supersede the old one contrary to the wishes of any member of the old one, was unconstitutional. Thus it will be seen that both cases are in harmony. Both condemn the act in question.

On the subject of whether plaintiff has a cause of action in equity the point is made, in addition to those heretofore discussed, that the complaint, in effect, admits the incorporation of the stock company; that therefore it became vested with the property of the old organization, and, there being no allegation that the new company is not ready, willing, and able to pay all the liabilities of the old company, the latter could not maintain this action, therefore plaintiff cannot. The complaint, as we understand it, makes no admission that the new company is vested with the title to the assets of the Germantown Farmers' Mutual Insurance Company. It admits that it has manual possession thereof, but charges that the legal title and right of possession is in the mutual company. It further alleges that the officers of the latter are so concerned in the commission of the wrong that there is no reasonable ground to expect that they will efficiently assert its rights. That makes a clear case for the plaintiff, since he is pecuniarily interested in the protection of the old company's rights, to invoke equity to enforce its cause of action. Whether the right of the mutual company is legal or equitable makes no difference as regards the rights of the appellant to invoke equity. That field of judicial activity only is open to him. One of the most common and important subjects of equity jurisdiction is the protection of equitable rights formed on legal or equitable rights of corporations, public or private,.

when those who should resort to judicial remedies to con-
serve the same will not do so. *Land, L. & L. Co. v. McIn-
tyre,* 100 Wis. 245, 256, 75 N. W. 964; *Kircher v. Peder-
son,* 117 Wis. 68, 93 N. W. 813; *Balch v. Beach,* 119 Wis..
77, 95 N. W. 132.

The doctrine of the New York court, cited to our attention
from *Grobe v. Erie Co. Mut. Ins. Co.* 39 App. Div. 183, 57
N. Y. Supp. 290, that "the unascertained interest of a mere
member of a corporation is not of sufficient significance to
challenge attention of a court of equity to protect it. To per-
mit corporations to be managed by suits in equity, instituted
in the interests of persons holding such indefinite rights,
would produce intolerable confusion and end substantially in
the destruction of such enterprises," has no place here. We
had occasion to examine it at some length in *Land, L. & L.
Co. v. McIntyre, supra.* It is entirely inconsistent, as it
seems, with the real functions of equity jurisdiction. The
idea that a member of a corporation pecuniarily interested in
the vindication or prevention of some wrong to it, which it
has not capacity to do for itself because of the attitude of un-
faithful officers, cannot in behalf of himself and others sim-
ilarly interested apply successfully at the door of equity be-
cause his interest as a single member is small, is unworthy to
be entertained. It has not found and cannot find any favor
here. There is no such reproach upon our judicial system.
The jurisdictions are exceptional where the rule is not recog-
nized and broadly applied that where a cause of action exists;
in favor of a corporation and its governing body refuses to
enforce it, any member thereof may do so, suing in equity in
behalf of himself and others. The direct injury to the cor-
poration is the primary end, in such action, to be remedied..
It may be very large and the interest of the active instrument
in conserving it may be very small. The former is the sig-
nificant end, the latter is sufficient for the case so long as it
is appreciable as a property interest. 4 Thompson, Corp..

§ 4479. In *Schwarzwaelder v. German Mut. F. Ins. Co.* 59 N. J. Eq. 589, 44 Atl. 769, under such conditions as we have here, equity jurisdiction at the suit of a single policy-holder enjoined the re-organization proceedings upon the ground that the threatened injury to him was irreparable. The court held that the re-organization could not proceed against the protest of a single member, and that as neither the common law nor statute offered any adequate legal remedy for such a deprivation of property the matter was within one of the well recognized heads of equity jurisprudence.

The point is made that the complaint alleges that the Germantown Insurance Company is a corporation organized under the provisions of ch. 89, Stats. 1898, and ch. 229, Laws of 1903, and that such being the case it must necessarily, as a *de facto* corporation at least, be the owner of the assets of the old corporation and beyond the reach of any but direct proceedings at the suit of the state to inquire into its right in the matter. True, the complaint so alleges, but the allegation must be construed in the light of the whole pleading. It can mean no more than that everything was done, which it was competent to do under the laws referred to, to make the Germantown Insurance Company a corporation. The whole gravamen of the pleading is that the law of 1903 offends against the constitution and therefore everything done under it is void. The complaint states: "The individual defendants with divers other persons combined and confederated for the unlawful purpose" of depriving the Germantown Farmers' Mutual Insurance Company of its property "and therefore caused to be organized the above named defendant, Germantown Insurance Company, and thereafter undertook to re-incorporate said Germantown Farmers' Mutual Insurance Company into a stock corporation under the name of the Germantown Insurance Company, and *undertook*" to transfer the property of the old company to the Germantown Insurance

Company, and through the acts of such individual defendants the latter company converted the property of the old corporation to its own use. While it speaks of the new creation as a corporation it pleads the underlying fact,—the fact that the proceedings to incorporate it are such only as the re-organization act, in terms, authorized. Whatever there is in the complaint, suggesting in terms that the legal effect of such acts was to create even a *de facto* corporation, is contrary to the whole spirit and obvious intent of the pleading and in any event cannot control contrary to the law governing the matter. The law of 1903 being unconstitutional, as we hold it to be, and being the inducing feature of the legislative scheme under which the re-organization occurred, the whole must fall together. That is, the general statute as regards the incorporation of mutual insurance companies must be deemed to have been incorporated in the act of 1903 for a complete scheme of re-incorporation of mutual insurance companies. Clearly the legislature would not have used the general law for the incorporation of insurance companies as a means of turning existing mutual into stock companies as it did without the enabling act of 1903. That law must be deemed the inducing provision and so the whole scheme falls under constitutional limitations. *Slauson v. Racine,* 13 Wis. 398; *State ex rel. Walsh v. Dousman,* 28 Wis. 541; *State ex rel. La Valle v. Sauk Co.* 62 Wis. 376, 22 N. W. 572; *Gilbert-Arnold L. Co. v. Superior,* 91 Wis. 353, 64 N. W. 999.

The foregoing results in the respondent company having no basis for corporate existence but the unconstitutional law, which is not sufficient to support even a *de facto* corporation. The latter can exist only where there is a valid law under which the corporation might have been created *de jure.* It is in the latter situation that the existence of a corporation can only be inquired into by a direct action in the name of the state. *Evenson v. Ellingson,* 67 Wis. 634, 646, 31 N. W.

342; *In re Incorporation of North Milwaukee,* 93 Wis. 616, 67 N. W. 1033; *Gilkey v. How,* 105 Wis. 41, 81 N. W. 120.; *Winneconne v. Winneconne,* 111 Wis. 10, 12, 86 N. W. 589; *Methodist E. U. Church v. Pickett,* 19 N. Y. 482; *Vanneman v. Young,* 52 N. J. Law, 403, 20 Atl. 53.

It is proper and perhaps best to observe, in passing, that upon the facts alleged the title to the business and assets formerly possessed by the Germantown Farmers' Mutual Insurance Company is still in such company entirely unimpaired by the re-organization law and the acts which occurred under it. The business conducted by its pretended successor, the Germantown Insurance Company, must be regarded as a mere continuation of its business with all that such situation means.

If it were a fact in the case before us that the Germantown Insurance Company was a valid corporation, it would make no difference with plaintiff's cause of action if the fact remained that it had obtained wrongful possession of the assets of the Farmers' Company and the officers of the latter would not take the proper steps to remedy the mischief. This is not an action necessarily depending on whether the wrong-doer was a valid corporation or not. It is not an action to inquire into corporate existence. It is one to recover into the possession of the Germantown Farmers' Mutual Insurance Company its property *in specie,* or the equivalent thereof, which has been, as is alleged, wrongfully taken from it. That might be accomplished whether the new company was or was not a corporation *de jure* or *de facto.* It is only a mere incident of the action that it is held to be neither.

Some other questions of minor importance are discussed in the briefs of counsel. They are included, it is thought, in those heretofore treated, or are rendered immaterial by what has been said. The discussion of the ground of demurrer that the complaint is insufficient to state a cause of action, to which this opinion has been mainly directed, really covers

the charge of want of jurisdiction and want of capacity to sue. The cause of action of the Farmers' Company is grounded on the wrongful conduct of the individual defendants, which was made fruitful by means of the unconstitutional law under which the new company was organized, in that it resulted in depriving the Farmers' Company of its property. The cause of action of appellant, standing for himself and others, is grounded on his pecuniary interest in the enforcement of the rights of his company. His right is equitable, and his remedy necessarily so. On that account, and since there is no legal remedy for him, the indirect injury is of sufficient and substantial character to be a proper subject for redress. The jurisdiction of the subject matter is grounded on the necessary uses of equity, and the insufficient basis for the corporate existence of the new organization, if that were a necessary fact. Plaintiff's legal capacity to sue is based on the foregoing situation and the fact that without such capacity the wrong complained of would go unredressed, the attitude of those who only could directly act for the Farmers' Company being hostile to such action. The challenge to the jurisdiction of the person and to improper joinder of causes of action appears not to be pressed here, and to be so obviously without merit as not to require more than this passing mention.

We apprehend that we have sufficiently covered the whole subject presented for consideration as to render it useless to proceed further.

*By the Court.*—The order appealed from is reversed.

Respondents moved for a rehearing.

*Lewis & Roach,* attorneys, and *Quarles, Spence & Quarles,* of counsel, for the appellant.

*Sawyer & Sawyer* and *G. A. Kuechenmeister,* for the respondents.

The following opinion was filed March 20, 1906:

MARSHALL, J.    All points suggested to secure a modification of the former decision have received due attention.   The argument in favor of the motion in that regard is significantly headed "Explanatory."   Why counsel regarded an explanation of their position necessary is not perceived.   Counsel are always presumed here to present in good faith the cause of their client as they find it.   They are not supposed, in any case, to be otherwise concerned.   It was not thought here, prior to the explanation, that the situation was different in this instance than commonly.   Any case after presentation *here* must necessarily be disposed of as it seems to deserve. If it is a bad one, such disposition is liable to indicate that character with more or less clearness, yet without any reflection whatever on counsel for merely having performed professional duties, giving the best reasons occurring to them, after a diligent study of the subject, and referring to authorities within their reach, by them supposed to apply, to aid the court.   We may well credit counsel for respondents with having distinguished themselves in that regard.   They probably called to our attention, and in a helpful manner, every feature of the law of 1903 affecting favorably its validity. With like probability they invoked every legal principle bearing upon the matter, citing an array of authority for examination, evincing the most commendable industry.   The case of respondents did not suffer for want of any aid counsel could have afforded the court.

What is said in the discussion in support of a decision is directed wholly to the case as it appears.   That is treated in a wholly impersonal way.   It may reflect on the party responsible for the situation, but not on the attorney who merely performs his professional duty.   It does not seem, *here,* that any explanation whatever was required from counsel who so ably presented the case at the bar, or the other distin-

guished counsel who was absent, both of whom are held in the highest regard.

What was formerly said as to that part of the decision holding that the so-called re-organized company is not even a *de facto* corporation was grounded upon very familiar principles. The result was inevitable. It cannot be changed. If it were true that the decision in that regard will result in the hardships suggested, as to leaving a large number of policy contracts in a state of uncertain validity, and a large amount of securities, taken in the name of the new organization, with an uncertain status, it would not change the law. If one unlawfully takes the money of another and loans it to a third person presumed to know the facts, it is hardly a good answer to a claim for restoration that the vindication of the right of such other will embarrass the wrongdoer and those who have dealt with him, on account of the former having confused his money with that of such other and loaned the two in combination to the third person.

It is thought that the former opinion renders it plain that the business of the so-called new corporation was in effect a mere continuance of that of the Farmers' Company under a somewhat new name. The so-called new policy-holders, and the so-called old policy-holders whose contracts have not expired, are policy-holders with equal standing in the Germantown Farmers' Mutual Insurance Company. The last officers elected of such company are still its officers and will necessarily continue to be such until their successors shall have been duly elected and qualified according to the charter. Whatever titles there are outstanding as to tangible or intangible things, belonging to the Farmers' Company, are held merely in trust therefor by the collection of individuals who have assumed another name. The whole beneficial interest in such property is in the Farmers' Company. It has a right to be immediately clothed with the legal title thereto, so far as it is not possessed thereof, and to that extent the trustees of the

same are fully competent, without delay, to make the proper conveyance. Facing the situation just as it is, without thought of how to avoid the effect, it is not perceived why there is any physical or legal difficulty in promptly restoring the former situation, preserving reasonably the equities of the promoters of the new enterprise growing out of their money having been paid into the common fund for so-called stock.

We note what counsel say as to persons holding policies issued in the name of the so-called new company not having participated in, and so perhaps not being bound by, the adjudication that such company is not a corporation in any sense and may hold it to be otherwise on the doctrine of estoppel. We are not unmindful of the rule in that regard and that in some circumstances it extends beyond corporations *de facto* and includes such cases as that of a collection of persons falsely assuming to be a corporation, when there is no semblance of corporate existence. *Citizens' Bank v. Jones,* 117 Wis. 446, 94 N. W. 329; *Clausen v. Head,* 110 Wis. 405, 85 N. W. 1028. It does not apply, however, where the parties knew, or ought to have known, the true situation, for then the essential element, the reasonable belief in the corporate existence and reasonable reliance thereon, does not exist. Here all parties must be presumed, conclusively, to have known that the ostensible corporation was not a corporation at all, but was a mere usurping representative of the Farmers' Company.

So it will be found, by looking at the matter rightly, that the supposed difficulties in the way of a restoration of the rightful condition of things as to the Farmers' Company, are but spectres: merely contemplated, they may grow: approached with one purpose, they will merely recede: approached with a firm determination to accept the inevitable situation, they will disappear as the dew before the morning sun.

*By the Court.*—The motion is denied.